Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

**2016 CO 55**

**Nos. 16SA153, 16SA154, In re Title, Ballot Title & Submission Clause for 2015–2016 #132 and #133—Single Subject.**

The supreme court holds that Initiatives #132 and #133 encompass multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, C.R.S. (2015). By combining the restructuring of the Colorado Reapportionment Commission with changes to the constitutional role of the Colorado Supreme Court Nominating Commission, both Initiatives violate the single subject requirement. Further, Initiative #132 removes the power to draw congressional districts from the General Assembly and reallocates that constitutional power to the new Redistricting Commission. This constitutes an additional third subject. The court therefore reverses the actions of the Title Board and remands these cases to the Title Board with directions to strike the title, ballot title and submission clauses, and to return the Initiatives to their Proponents.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2016 CO 55

### Supreme Court Case No. 16SA153

*Original Proceeding Pursuant to § 1-40-107(2), C.R.S. (2015)*

Appeal from the Ballot Title Setting Board

In the Matter of the Title, Ballot Title and Submission Clause for 2015–2016 #132

### Petitioner:

Donna R. Johnson,

v.

### Respondents:

Kathleen Curry and Frank McNulty,

and

### Title Board:

Suzanne Staiert, Frederick Yarger, and Sharon Eubanks.

\* \* \* \* \*

In the Matter of the Title, Ballot Title and Submission Clause for 2015–2016 #133

**Petitioner:**

Donna R. Johnson,

v.

**Respondents:**

Kathleen Curry and Frank McNulty,

and

**Title Board:**

Suzanne Staiert, Frederick Yarger, and Sharon Eubanks.

**Title Board Actions Reversed**
*en banc*
July 5, 2016

**Attorneys for Petitioner:**
Recht Kornfeld, P.C.
Mark G. Grueskin
  *Denver, Colorado*

**Attorneys for Respondents:**
Ireland Stapleton Pryor & Pascoe, P.C.
Kelley B. Duke
Benjamin J. Larson
  *Denver, Colorado*

**Attorneys for Ballot Title Board:**
Cynthia H. Coffman, Attorney General
Matthew D. Grove, Assistant Solicitor General
  *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE BOATRIGHT** dissents, and **JUSTICE COATS** and **JUSTICE EID** join in the dissent.

¶1 In these original proceedings pursuant to section 1-40-107(2), C.R.S. (2015), Petitioner Donna R. Johnson challenges the actions of the Title Board in setting titles and ballot title and submission clauses (collectively, "titles") for proposed Initiatives "2015–2016 #132 'Colorado Redistricting Commission'" ("Initiative #132") and "2015–2016 #133 'Colorado Legislative Redistricting Commission'" ("Initiative #133").[1] We conclude that both of the proposed Initiatives encompass multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, C.R.S. (2015). Accordingly, we reverse the actions of the Title Board.

## I. Facts and Procedural History

¶2 Kathleen Curry and Frank McNulty ("Proponents") are the designated proponents of proposed Initiatives #132 and #133. These Initiatives are substantially similar in language and form and represent two of several redistricting concepts proposed by the Proponents during the 2016 election cycle. Both Initiatives would amend article V, sections 44 to 48 of the Colorado Constitution (the provisions that address congressional and state legislative redistricting) by restructuring or replacing the Colorado Reapportionment Commission—the state commission presently tasked with establishing, after each federal census, the boundaries for the thirty-five state senate districts and sixty-five state house of representative districts for the Colorado General Assembly. Colo. Const. art. V, §§ 45, 46, 48. The Colorado Reapportionment Commission presently consists of eleven members who are appointed by officials in the

---

[1] The texts and titles of Initiatives #132 and #133 are attached as Appendices A and B, respectively.

3

legislative, executive, and judicial branches of state government. Colo. Const. art. V, § 48(1)(b). Four members of the commission are appointed by leaders in the senate and house of representatives; three members are appointed by the governor; and four members are appointed by the chief justice of the Colorado Supreme Court. Id. Article V, sections 48(1)(a) and (c) set forth political affiliation and geographical residency requirements for the membership of the commission and establish the timeframes and processes for creating the decennial state legislative redistricting plan.

¶3 Both proposed Initiatives begin by adding to article V of the Colorado Constitution a section entitled "Political gerrymandering prohibited," which declares that the practice of political gerrymandering must end, and that the public's interest in creating fair and competitive districts is best accomplished by an independent commission of balanced appointments that is free from political influence and that relies on nonpartisan staff to divide the state into districts without regard to political pressures or to political considerations.

¶4 Next, the proposed Initiatives essentially rewrite article V, section 48 to restructure or replace the Reapportionment Commission. Initiative #133 would restructure the Reapportionment Commission and rename it the Independent Colorado Legislative Redistricting Commission. This restructured commission would remain responsible for setting boundaries for state legislative districts. Initiative #132 would replace the Reapportionment Commission with a new commission called the Independent Colorado Redistricting Commission. This new commission likewise would set boundaries for state legislative districts, but unlike #133, the new commission

4

created by #132 would take on the additional responsibility of setting boundaries for Colorado's congressional districts—a responsibility presently vested with the General Assembly. Colo. Const. art. V, § 44.

¶5 Through amendments to sections 44 through 48 of article V, both proposed Initiatives would make substantial changes to the Colorado Reapportionment Commission and its processes. For example, both Initiatives modify the criteria to be used in drawing districts; subject the commission to open meetings and open records laws; require a two-thirds vote of commissioners to approve any action of the commission; change the process for drafting and approving redistricting plans and the process for supreme court review of such plans; and allow the reconfigured commission to adopt rules to govern its administration and operation, among other details.

¶6 Both proposed Initiatives would also modify the membership of the commission by increasing the total number of members to twelve; prohibiting registered lobbyists, as well as members of or candidates for the U.S. Congress or the General Assembly, from serving as members of the commission; and modifying the political affiliation and geographical residency requirements for the membership of the commission. In addition, and relevant here, both Initiatives would require the Colorado Supreme Court Nominating Commission (the "Supreme Court Nominating Commission" or "Nominating Commission") to "establish and announce a process for appointment" of the four members of the commission who are either registered with a minor political party or unaffiliated with any political party. The proposed Initiatives would require the Nominating Commission to solicit, receive, and review applications for these

5

positions; to generate a list of ten recommended applicants representing, to the extent possible, Colorado's racial, ethnic, and geographic diversity; and to forward this list of recommended applicants to the eight previously appointed members of the commission. The proposed Initiatives would require the eight appointed members, by unanimous vote, to appoint the remaining four members of the commission from the list of finalists generated by the Nominating Commission. If the commissioners fail in their responsibility to make these appointments, the proposed Initiatives would require the director of the General Assembly's nonpartisan research staff to randomly select names from the Nominating Commission's list in a public drawing until the commission is filled with members who collectively meet the geographic residency requirements.

¶7     On April 8, 2016, Proponents submitted a final version of Initiatives #132 and #133 to the Secretary of State. On April 20, 2016, the Title Board conducted hearings for each initiative and set titles in accordance with section 1-40-106(1), C.R.S. (2015). On April 27, 2016, Petitioner filed motions for rehearing, arguing that the Initiatives contain multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. After a rehearing on April 28, 2016, the Title Board denied both motions. Following the rehearing, the title set for Initiative #133 states:

> An amendment to the Colorado constitution concerning state legislative redistricting and, in connection therewith, restructuring the state commission that sets boundaries for state senatorial and representative districts to require at least 4 of the 12 commissioners be affiliated with a minor political party or unaffiliated with any political party; prohibiting commissioners from being registered lobbyists or members or candidates for the U.S. Congress or the Colorado legislature; requiring the agreement

6

of at least 8 of 12 commissioners to approve any action of the commission; adding competitiveness as the final criteria to be used in drawing state legislative districts; establishing a procedure to set legislative district boundaries if the commission is unable to adopt a plan; and requiring that the commission's work be done in public meetings.

¶8 The title set for Initiative #132 is similar to the title set for #133, except for an initial reference to "redistricting" (in lieu of "state legislative redistricting"); a reference to "replacing" (in lieu of "restructuring") the reapportionment commission; and language reflecting the newly created commission's task to establish congressional districts in addition to state legislative districts:

> An amendment to the Colorado constitution concerning redistricting in Colorado, and, in connection therewith, replacing the Colorado reapportionment commission with a Colorado redistricting commission; directing that the commission redistrict congressional districts and state legislative districts; requiring the appointment of 12 commissioners, of whom at least 4 must be either a member of a minor political party or unaffiliated with any political party; prohibiting commissioners from being registered lobbyists or members or candidates for either Congress or the state legislature; requiring the agreement of at least 8 of 12 commissioners to approve any action of the commission; adopting existing criteria for congressional districts and adding competitiveness to the criteria for state legislative and congressional districts; requiring that only the nonpartisan staff of the commission may submit plans to the commission; and requiring that the commission's work be done in public meetings.

¶9 Petitioner invokes this court's jurisdiction under section 1-40-107(2), C.R.S. (2015). She contends that the Title Board erred in setting the titles because the Initiatives contain multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. Specifically, Petitioner argues that both proposed Initiatives contain at least three subjects: (1) changing the existing Colorado Reapportionment Commission processes for establishing state legislative districts; (2) changing the

7

mission and role of the Supreme Court Nominating Commission by requiring it to select the finalists for the four "swing vote" (i.e., minor party or unaffiliated) members of the reconfigured redistricting commission; and (3) curtailing the political involvement of lobbyists by prohibiting them from serving on the commission. Petitioner further contends that Initiative #132 contains a fourth subject: transferring the power to draw Colorado's congressional districts from the General Assembly to the newly created Redistricting Commission and establishing new criteria and procedures for the congressional redistricting process.

## II. Standard of Review

¶10 In reviewing Title Board decisions, "we employ all legitimate presumptions in favor of the propriety of the Board's actions." In re Title, Ballot Title & Submission Clause for 2011–2012 #3, 2012 CO 25, ¶ 6, 274 P.3d 562, 565 (quoting In re Title, Ballot Title & Submission Clause for 2009–2010 #45, 234 P.3d 642, 645 (Colo. 2010)). Thus we will overturn the Title Board's finding that an initiative contains a single subject only in a clear case. Id.

¶11 In our limited review of the Title Board's actions, we do not address the merits of the proposed initiatives or suggest how they might be applied if enacted. Id. at ¶ 8. However, we must examine their wording to determine whether the initiatives and their titles comport with the single subject and clear title requirements. In re Title, Ballot Title & Submission Clause, & Summary for 2005–2006 #75, 138 P.3d 267, 271 (Colo. 2006). In conducting this limited inquiry, we employ the general rules of statutory construction and give words and phrases their plain and ordinary meaning.

In re Title, Ballot Title & Submission Clause for 2007–2008 #17, 172 P.3d 871, 874 (Colo. 2007).

## III. Analysis

## A. The Single Subject Requirement

¶12   Petitioner contends that the Title Board erred in setting titles for Initiatives #132 and #133 because both proposed Initiatives violate the single subject requirement found in article V, section 1(5.5) of the Colorado Constitution, which provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed.  If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

See also § 1-40-106.5, C.R.S. (2015) (addressing the constitutional single subject requirement).

¶13   The single subject requirement serves two functions.  First, the single subject requirement "is intended to ensure that each proposal depends upon its own merits for passage."  In re Proposed Initiative on Public Rights in Waters II, 898 P.2d 1076, 1078 (Colo. 1995); see also § 1-40-106.5(1)(e)(I), C.R.S. (2015) (single subject requirement "forbid[s] the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon

9

their merits"). Like the constitutional single subject requirement for bills passed by the General Assembly, the single subject requirement for ballot initiatives prevents proponents from engaging in "log rolling" tactics, that is, combining multiple subjects into a single initiative in the hope of attracting support from various factions that may have different or even conflicting interests. In re Title, Ballot Title, & Submission Clause for 2013–2014 #76, 2014 CO 52, ¶ 32, 333 P.3d 76, 85; In re Title, Ballot Title & Submission Clause, & Summary for 1997–1998 #84, 961 P.2d 456, 458 (Colo. 1998).

¶14    Second, the single subject requirement is intended "to prevent surprise and fraud from being practiced upon voters" caused by the inadvertent passage of a surreptitious provision "coiled up in the folds" of a complex initiative. § 1-40-106.5(1)(e)(II); In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001–2002 #43, 46 P.3d 438, 442 (Colo. 2002).

¶15    To satisfy the single subject requirement, "the subject matter of an initiative must be necessarily and properly connected rather than disconnected or incongruous." In re 2011–2012 #3, ¶ 9, 274 P.3d at 565 (internal quotation marks omitted). A proposed initiative presents only one subject if it tends to effect or carry out one general objective or purpose; minor provisions necessary to effectuate the single objective or purpose of the initiative may be properly included. See In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 #256, 12 P.3d 246, 253 (Colo. 2000).

¶16    Conversely, "[a]n initiative violates the single subject requirement where it relates to more than one subject and has at least two distinct and separate purposes." In re Title, Ballot Title & Submission Clause for 2013–2014 #90, 2014 CO 63, ¶ 11, 328 P.3d

10

155, 159. If an initiative advances separate and distinct purposes, the fact that they both relate to the same general concept or subject is insufficient to satisfy the single subject requirement. In re Title, Ballot Title & Submission Clause, & Summary for 1997–1998 #64, 960 P.2d 1192, 1196 (Colo. 1998); see also In re 2001–2002 #43, 46 P.3d at 442 ("[A] proponent's attempt to characterize his initiative under some overarching theme will not save an initiative containing separate and unconnected purposes."). "Grouping the provisions of a proposed initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement." In re Proposed Initiative 1996–4, 916 P.2d 528, 532 (Colo. 1996).

## B. The Titles Violate the Single Subject Requirement

¶17 Proponents assert that all of the provisions of the two Initiatives relate to the single subject of "redistricting in Colorado" and thus satisfy the constitutional single subject requirement. They contend that the central purpose of the Initiatives is to end the practice of political gerrymandering in the redistricting process, and that the Initiatives seek to achieve this purpose through the proposed changes to the Reapportionment Commission.

¶18 We recently held that a host of significant changes to the manner in which recall elections are triggered and conducted constituted a single subject. In re 2013–2014 #76, ¶¶ 17–25, 333 P.3d at 81–83 (describing changes to signature thresholds, ballot content, manner of filling vacancies, the applicability of campaign finance laws, and petition circulation requirements for recall elections as constituting a single subject). In this case, Initiatives #132 and #133 propose comparable changes to the current

11

Reapportionment Commission and its processes for establishing state legislative districts. To the extent Initiatives #132 and #133 modify the criteria to be used in drawing legislative districts, subject the restructured commission to open meetings and open records laws, require a two-thirds vote of commissioners to approve any action of the commission, change the process for drafting and approving redistricting plans and the process for supreme court review of such plans, and allow the reconfigured commission to adopt rules to govern its administration and operation—such changes to the state legislative redistricting process collectively constitute a single subject. See id. at ¶ 25, 333 P.3d at 83.

¶19 However, Initiatives #132 and #133 also propose a significant change to the mission and role of the existing Supreme Court Nominating Commission; moreover, Initiative #132 also proposes a fundamental reallocation of the power to draw the districts for Colorado's seats in the U.S. Congress, removing that constitutional legislative power from the General Assembly and transferring it to the proposed new Independent Colorado Redistricting Commission. We agree with Petitioner that these aspects of the Initiatives constitute impermissible additional subjects.

### 1. Changes to the Constitutional Objective of the Supreme Court Nominating Commission

¶20 In 1966, Colorado voters enacted the state's judicial merit selection system as part of article VI of the Colorado Constitution, which addresses the Judicial Department. Article VI, section 24 describes the Supreme Court Nominating Commission and the process by which members are appointed. Colo. Const. art. VI, §§ 24(2), (4). Article VI,

section 20 tasks the Nominating Commission with creating a list of three nominees for vacancies on the supreme court and court of appeals. Id. § 20(1). This provision requires the Nominating Commission to certify and submit the list to the Governor within thirty days after a vacancy occurs. The constitutional role of the Supreme Court Nominating Commission is limited to this specific function for the judicial and executive branches; under current law, it has no role whatsoever in the process of either state legislative redistricting or congressional redistricting.

¶21 Petitioner argues that by requiring the Nominating Commission to select finalists for the four minor party or unaffiliated members of the reconfigured Reapportionment Commission, the proposed Initiatives fundamentally alter the constitutional role and mission of the Nominating Commission. Petitioner contends that because "redistricting in Colorado" does not encompass "changes to the objective of an independent judicial nominating commission," the Initiatives hide a second subject from unwary voters, allowing surprise and fraud to be practiced upon them, see § 1-40-106.5(1)(e)(II).

¶22 Proponents counter that the Initiatives' implementing provisions, including the proposed new role of the Nominating Commission, are directly connected to the central purpose of depoliticizing redistricting and are therefore not separate subjects.

¶23 At first blush, the proposed involvement of the Supreme Court Nominating Commission in recommending finalists for these seats appears to be simply part and parcel of the host of changes to the proposed reconfigured Reapportionment Commission. However, this aspect of the proposed Initiatives reaches beyond changes

13

to the Reapportionment Commission to fundamentally alter the role and objective of an unrelated constitutional commission.

¶24    In In re 1997–1998 #64, this court held that a provision in a proposed initiative that altered the composition and powers of the Commission on Judicial Discipline violated the single subject requirement because it was not properly and necessarily related to the initiative's purpose, which was to alter the qualifications of judicial officers. 960 P.2d at 1197, 1199. We observed that the Commission on Judicial Discipline is an independent constitutional body with power derived from "a separate and independent constitutional basis" than the judicial branch. Id. at 1199. We reasoned that altering the powers of this separate commission furthered a distinct purpose, and therefore violated the single subject requirement. Id. at 1199–1200.

¶25    Likewise, Initiatives #132 and #133 would fundamentally change the role and mission of the Nominating Commission, a separate and independent commission that currently has no role whatsoever in the legislative process of redistricting. We have observed that "[r]edistricting is an incredibly complex and difficult process that is fraught with political ramifications and high emotions." Hall v. Moreno, 2012 CO 14, ¶ 1, 270 P.3d 961, 963; accord Bush v. Vera, 517 U.S. 952, 1012 n.9 (1996) (Stevens, J., dissenting) (observing that redistricting is "inherently political"). By contrast, Colorado voters created the judicial nominating commissions in article VI, section 24 to foster an independent judiciary by separating and insulating the courts from politics. See Formal Op. Att'y. Gen. No. 04–03 (April 12, 2004). By adding to the Nominating Commission's otherwise apolitical role of recommending judicial appointments the new and

14

inherently political task of recommending members for the reconfigured Reapportionment Commission, the proposed Initiatives would do more than restructure the Reapportionment Commission—they would fundamentally change the role and mission of the independent Supreme Court Nominating Commission.

¶26 Initiatives #132 and #133 run the risk of surprising voters with a "surreptitious" change not anticipated by the seemingly neutral requirement that the Nominating Commission recommend candidates for appointment to the Redistricting Commission. See § 1-40-106.5(1)(e)(II). We have disapproved of second subjects "coiled up in the folds of a complex proposal," e.g., In re 2013–2014 #76, ¶ 32, 333 P.3d at 85, and we conclude that the proposed changes to the Nominating Commission are just that. Although the Petitioner does not challenge the language of the titles set by the Title Board, we note that voters would have no notice of this fundamental shift because the titles make no reference whatsoever to the Nominating Commission's changed role.[2]

## 2. Transfer of Congressional Redistricting Power from the General Assembly to the New Redistricting Commission

¶27 Petitioner also contends that proposed Initiative #132 violates the single subject requirement by removing the power to redistrict Colorado's congressional districts from the General Assembly and transferring it to a newly created Redistricting Commission. We agree.

---

[2] Because we conclude that this aspect of the Initiatives violates the single subject requirement, we decline to address the Petitioner's claim that both Initiatives' proposed ban on lobbyist participation establishes an impermissible third subject.

15

¶28 In In re 1997–1998 #64, we also addressed a provision of the proposed initiative to alter the qualifications of judicial officers that would have repealed article VI, section 26 of the Colorado Constitution—the provision that grants the City and County of Denver home rule control over its own county court judges. 960 P.2d at 1198. We reasoned that although this provision indirectly affected the qualifications of Denver County court judges in the sense that it changed the governmental entity that controls those qualifications, the proposed repeal of this provision nevertheless served the separate purpose of "reallocating governmental authority and control" over Denver County court judgeships. Id. We concluded that this reallocation of power did not share a unifying or common objective with the provisions of the proposed initiative changing the qualifications of judicial officers, and therefore held that this provision violated the single subject requirement. Id.

¶29 Initiative #132 bears a similar flaw: Although shifting the responsibility of congressional redistricting to the Reapportionment Commission affects its duties, the objective of this aspect of the proposed Initiative is to reallocate constitutional authority and control over congressional redistricting. Such a reallocation of constitutional power is a separate and discrete objective, and its inclusion in Initiative #132 therefore violates the single subject requirement.

¶30 The authority of the General Assembly to define congressional districts derives from article I, section 4 of the United States Constitution. Since statehood, the Colorado Constitution also has expressly placed with the General Assembly the responsibility to

16

divide the state into congressional districts.  See Colo. Const. art. V, § 44.[3]  Initiative #132's proposal to remove this constitutional authority for congressional redistricting from the General Assembly and transfer it to the newly created Redistricting Commission thus affects separate redistricting processes derived from different sources of constitutional authority.

¶31    Proponents argue that the "practical reality" is that congressional and legislative redistricting involve similar issues and goals, regardless of underlying authority, and thus both are properly included in the broader subject of "redistricting in Colorado." We disagree.  The fact that these two processes are addressed by separate constitutional schemes is meaningful and relevant to the single subject analysis.  See In re Title, Ballot Title & Submission Clause, & Summary With Regard to a Proposed Petition for an Amendment to Constitution of State Adding Section 2 to Article VII (Petition Procedures), 900 P.2d 104, 109 (Colo. 1995) (holding that an initiative combining procedural and substantive changes to recall, referendum, and initiative petitions involved multiple subjects in part because the "Colorado Constitution treats these different citizen initiated measures in separate sections").

¶32    Contrary to Proponents' assertion that legislative and congressional redistricting are closely related and involve comparable criteria, the Colorado Constitution addresses these processes separately and provides different levels of guidance for each.  State

_____

[3] In People ex rel. Salazar v. Davidson, 79 P.3d 1221, 1232 (Colo. 2003), we recognized that courts are sometimes forced to draw congressional districts when the legislature fails to do so; in that instance, the court's order fulfills the state's obligation to provide constitutional districts for congressional elections in the absence of legislative action.

17

legislative redistricting is described in detail in article V, sections 46 to 48.  See Colo. Const. art. V, § 46 (directing that the state be divided into senatorial and representative districts based on population); id. § 47 (setting forth guidelines for creating district boundaries); and id. § 48 (creating the Reapportionment Commission and tasking it with developing a plan for state legislative districts).  These provisions list "a hierarchy of criteria" for measuring the adequacy of a state legislative redistricting plan, namely, equalizing population among the senate districts and among the house districts; restricting unnecessary division of counties; making each district as compact as possible; limiting the aggregate linear distance of the boundaries; and preserving communities of interest.  In re Colo. Gen. Assembly, 332 P.3d 108, 110–11 (Colo. 2011).

¶33     "In stark contrast to its elaborate provision for state senate and representative districts, the state constitution provides almost no guidance for or limitation on the general assembly's division of the state into congressional districts, other than requiring it do so."  Hall, ¶ 104, 270 P.3d at 982 (Coats, J., concurring) (citations omitted).  Thus, state legislative redistricting and congressional redistricting are distinct processes derived from distinct sources of constitutional authority and governed by different standards.[4]

---

[4] Notably, Initiative #132 would establish new constitutional criteria to be used for congressional redistricting.  These criteria appear to be drawn from section 2-1-102, C.R.S. (2015), a statute that lists both mandatory and permissive factors that courts presently consider in reviewing the lawfulness of a congressional redistricting plan. Initiative #132 proposes to incorporate and constitutionalize these statutory criteria and to add competitiveness to the list of considerations.

¶34 Importantly, Initiative #132 creates a danger of log rolling because the Initiative may attract a "yes" vote from voters who are unhappy with the current process for state legislative redistricting and would support restructuring the Reapportionment Commission but who might oppose removing the power to draw congressional districts from the General Assembly, or vice versa. See In re 2013–2014 #76, ¶ 8, 333 P.3d at 79. Although Proponents contend that giving the Redistricting Commission the added responsibility of congressional redistricting is properly related to the overarching subject of "redistricting in Colorado," we disagree.

¶35 We conclude that the removal of constitutional power over congressional redistricting from the General Assembly and the reallocation of that power to the Redistricting Commission constitutes an impermissible separate subject in violation of article V, section 1(5.5) of the Colorado Constitution. Such a reallocation of constitutional power is a separate and discrete objective, and its inclusion in Initiative #132 therefore violates the single subject requirement. See In re 2001–2002 #43, 46 P.3d at 442 (noting that a proponent's attempt to characterize an initiative under some overarching theme will not save an initiative that contains separate and unconnected purposes); In re Proposed Initiative 1996–4, 916 P.2d 528, 532 (Colo. 1996) ("Grouping the provisions of a proposed initiative under a broad concept that potentially misleads voters will not satisfy the single subject requirement.").

## IV. Conclusion

¶36 By combining the restructuring of the Reapportionment Commission with changes to the constitutional role of the Supreme Court Nominating Commission,

19

Initiatives #132 and #133 violate the single subject requirement and could unfairly mislead voters. Further, Initiative #132's removal of the power to draw congressional districts from the General Assembly and the reallocation of that constitutional power to the new Redistricting Commission constitutes an additional subject. Accordingly, we reverse the actions of the Title Board and remand these matters to the Board with directions to strike the title, ballot title and submission clauses, and to return the Initiatives to their Proponents.

**JUSTICE BOATRIGHT** dissents, and **JUSTICE COATS** and **JUSTICE EID** join in the dissent.

Be it Enacted by the People of the State of Colorado:

SECTION 1. In the constitution of the state of Colorado, **add** section 43.5 to article V as follows:

Congressional and Legislative Appointments

**SECTION 43.5. POLITICAL GERRYMANDERING PROHIBITED.** THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE THAT FAIR REPRESENTATION REQUIRES THAT THE PRACTICE OF POLITICAL GERRYMANDERING, WHEREBY CONGRESSIONAL, STATE SENATE AND STATE REPRESENTATIVE DISTRICTS ARE PURPOSEFULLY DRAWN TO FAVOR ONE POLITICAL PARTY OR INCUMBENT POLITICIAN OVER ANOTHER, OR TO ACCOMPLISH POLITICAL GOALS, MUST END. THE PUBLIC'S INTEREST IN PROHIBITING POLITICAL GERRYMANDERING AND IN CREATING FAIR AND COMPETITIVE PLANS FOR CONGRESSIONAL, STATE SENATORIAL AND STATE REPRESENTATIVE DISTRICTS IS BEST ACCOMPLISHED BY A NEW AND INDEPENDENT COMMISSION OF BALANCED APPOINTMENTS THAT IS FREE FROM POLITICAL INFLUENCE AND RELIES ON NONPARTISAN LEGISLATIVE STAFF TO DIVIDE THE STATE INTO THESE DISTRICTS WITHOUT REGARD TO POLITICAL PRESSURES OR POLITICAL CONSIDERATIONS.

SECTION 2. In the constitution of the state of Colorado, **amend** section 44 of article V as follows:

**Section 44. INDEPENDENT COLORADO REDISTRICTING COMMISSION.** ~~Representatives in congress. The general assembly shall divide the state into as many congressional districts as there are representatives in congress apportioned to this state by the congress of the United States for the election of one representative to congress from each district. When a new apportionment shall be made by congress, the general assembly shall divide the state into congressional districts accordingly.~~

(1) AFTER EACH FEDERAL CENSUS OF THE UNITED STATES, THE INDEPENDENT COLORADO REDISTRICTING COMMISSION SHALL MEET, IN OPEN MEETINGS AND SUBJECT TO OPEN MEETINGS AND PUBLIC DISCLOSURE LAWS, TO ADOPT COMPETITIVE PLANS FOR CONGRESSIONAL DISTRICTS, STATE SENATE DISTRICTS, AND STATE REPRESENTATIVE DISTRICTS AS IDENTIFIED BY SECTION 45 OF THIS ARTICLE V. THE COMMISSION MUST HOLD MEETINGS THROUGHOUT THE STATE AND CONDUCT ALL OF ITS ACTIVITIES IN PUBLIC AND IN PLACES WHERE MEMBERS OF THE PUBLIC ARE INVITED TO ATTEND. THE COMMISSION OR ITS STAFF SHALL NOT DRAW OR ADOPT ANY PLAN FOR THE PURPOSE OF FAVORING A POLITICAL PARTY, INCUMBENT MEMBER OF THE GENERAL ASSEMBLY, MEMBER OF CONGRESS OR OTHER PERSON.
(2) THE COMMISSION SHALL CONSIST OF TWELVE MEMBERS WHO HAVE THE FOLLOWING QUALIFICATIONS:

(a) FOUR MEMBERS WHO ARE UNAFFILIATED, NOT HAVING BEEN REGISTERED WITH ANY POLITICAL PARTY FOR A PERIOD OF AT LEAST TWO CALENDAR YEARS PRIOR TO THE MEMBER'S APPOINTMENT, OR ARE REGISTERED WITH A MINOR POLITICAL PARTY, HAVING BEEN REGISTERED WITH THAT PARTY FOR A PERIOD OF AT LEAST TWO CALENDAR YEARS PRIOR TO THE MEMBER'S APPOINTMENT.

(b) FOUR MEMBERS REGISTERED WITH ONE OF THE STATE'S TWO LARGEST POLITICAL PARTIES.

(c) FOUR MEMBERS REGISTERED WITH ANY POLITICAL PARTY, OR WHO ARE UNAFFILIATED, SO LONG AS NO POLITICAL PARTY HAS A MAJORITY OF MEMBERS ON THE COMMISSION.

(3) NO MEMBER OF THE COMMISSION MAY BE A REGISTERED LOBBYIST, INCUMBENT MEMBER OF THE GENERAL ASSEMBLY OR CONGRESS, OR A CURRENT CANDIDATE FOR ONE OF THESE OFFICES. ALL COMMISSION MEMBERS MUST BE QUALIFIED ELECTORS OF THE STATE OF COLORADO.

(4) AT LEAST ONE MEMBER OF THE COMMISSION SHALL BE APPOINTED FROM EACH CONGRESSIONAL DISTRICT, SO LONG AS COLORADO IS NOT APPORTIONED MORE THAN TWELVE CONGRESSIONAL DISTRICTS. NO MORE THAN THREE MEMBERS MAY COME FROM ANY SINGLE CONGRESSIONAL DISTRICT. AT LEAST ONE MEMBER SHALL RESIDE WEST OF THE CONTINENTAL DIVIDE AND AT LEAST ONE MEMBER SHALL RESIDE SOUTH OF EL PASO COUNTY'S SOUTHERN BOUNDARY AND EAST OF THE CONTINENTAL DIVIDE.

(5) ANY MOTION ADOPTED BY THE COMMISSION, INCLUDING THE ELECTION OF ITS OFFICERS AND APPROVAL OF ANY PLAN, REQUIRES THE AFFIRMATIVE VOTE OF AT LEAST EIGHT COMMISSION MEMBERS.

(6) EXCEPT AS TO MATTERS OTHERWISE PROVIDED FOR IN THIS SECTION AND SECTIONS 45, 46, 47 AND 48, THE COMMISSION SHALL ADOPT RULES TO GOVERN ITS ADMINISTRATION AND OPERATION INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING:

(a) MAINTENANCE OF A RECORD OF THE COMMISSION'S ACTIVITIES AND PROCEEDINGS, INCLUDING A RECORD OF WRITTEN AND ORAL TESTIMONY RECEIVED, AND OF THE COMMISSION'S DIRECTION TO NONPARTISAN STAFF ON PROPOSED CHANGES TO ANY PLAN AND THE COMMISSION'S RATIONALE FOR SUCH CHANGES;

(b) THE PROCESS FOR REMOVAL OF MEMBERS FOR VIOLATING PUBLIC DISCLOSURE OR OPEN MEETINGS PROVISIONS OF THIS ARTICLE, OR CONDUCTING PROHIBITED COMMUNICATIONS UNDER THIS ARTICLE;

(c) THE PROCESS FOR RECOMMENDING CHANGES TO PLANS SUBMITTED TO THE COMMISSION BY NONPARTISAN STAFF;

(d) PROVIDING FOR ANY VACANCY CREATED BY THE DEATH, RESIGNATION OR REMOVAL OF A MEMBER, OR OTHERWISE, WHICH MUST BE FILLED BY THE RESPECTIVE APPOINTING AUTHORITY. MEMBERS OF THE COMMISSION SHALL HOLD OFFICE UNTIL A REDISTRICTING PLAN IS IMPLEMENTED, OR OTHERWISE REMOVED;

(e) THE ADOPTION OF A STATEWIDE MEETING AND HEARING SCHEDULE; AND,

(f) THE PROCESS BY WHICH EACH COMMISSIONER WILL REPORT COMMUNICATIONS MADE OUTSIDE OF A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION RELATED TO THE MAPPING OF DISTRICTS.

(7) (a) THE COMMISSION IS SUBJECT TO COLORADO STATUTORY PROVISIONS CONCERNING OPEN MEETINGS, OPEN RECORDS AND DISCLOSURE BY PUBLIC OFFICIALS, GENERALLY REFERRED TO AS COLORADO SUNSHINE LAWS, AS AMENDED FROM TIME TO TIME BY THE GENERAL

ASSEMBLY, AND THE COMMISSIONERS ARE CONSIDERED PUBLIC OFFICIALS FOR THESE PURPOSES. FOR THE PURPOSE OF THIS COMMISSION, PROPER NOTICE FOR A MEETING OR HEARING, INCLUDING TIME, PLACE, AND AGENDA, MUST BE POSTED AT LEAST THREE DAYS PRIOR TO THE MEETING ON A WEB SITE DEDICATED FOR THE COMMISSION AND FOR THE PURPOSE OF REDISTRICTING.

(b) A COMMISSIONER WHO ENGAGES IN COMMUNICATIONS, IF THE COMMUNICATIONS ARE MADE OUTSIDE OF A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION AND ARE RELATED TO THE MAPPING OF CONGRESSIONAL OR LEGISLATIVE DISTRICTS, SHALL DISCLOSE, AT EACH MEETING, THE NAMES OF THE INDIVIDUALS WITH WHOM THE COMMISSIONER COMMUNICATED AND THE PURPOSE AND SUBJECT OF THE COMMUNICATION.

(c) COMMISSIONERS MAY COMMUNICATE WITH ONE ANOTHER ABOUT THE MAPPING OF CONGRESSIONAL AND LEGISLATIVE DISTRICTS, PROVIDED THAT COMMUNICATION BETWEEN MORE THAN THREE COMMISSIONERS AT ONE TIME MUST BE PROPERLY NOTICED PURSUANT TO THIS SUBSECTION (7). EXCEPT FOR TECHNICAL AND OPERATIONAL MATTERS, AND PREPARING AMENDMENTS DEVELOPED BY A COMMISSIONER FOR THE COMMISSION'S CONSIDERATION, COMMISSIONERS MAY NOT COMMUNICATE WITH STAFF ON THE MAPPING OF CONGRESSIONAL AND LEGISLATIVE DISTRICTS UNLESS THE COMMUNICATION IS DURING A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION.

(d) STAFF ARE NOT PERMITTED TO HAVE EX PARTE COMMUNICATIONS ABOUT THE CONTENT OR DEVELOPMENT OF ANY PLAN. COMMUNICATIONS TO AND FROM STAFF RELATED TO ADMINISTRATIVE, TECHNICAL AND OPERATIONAL MATTERS ON THE MAPPING OF CONGRESSIONAL AND LEGISLATIVE DISTRICTS, AND GENERAL DISCUSSIONS ABOUT THE REDISTRICTING PROCESS, ARE NOT PROHIBITED. WORK PRODUCT AND COMMUNICATIONS BETWEEN STAFF SHALL BE SUBJECT TO DISCLOSURE UNDER COLORADO OPEN RECORDS LAWS ONCE A PLAN TO WHICH THE WORK PRODUCT OR COMMUNICATION PERTAINS IS PRESENTED TO THE COMMISSION DURING A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION. AT THE DIRECTION OF THE COMMISSION, STAFF MAY CONSULT WITH EXPERTS RETAINED BY THE COMMISSION.

(e) ANY COMMISSIONER WHO PARTICIPATES IN A COMMUNICATION PROHIBITED IN SUBSECTION (7) WILL BE REMOVED FROM THE COMMISSION AND REPLACED WITHIN SEVEN DAYS ACCORDING TO COMMISSION RULES.

(f) ANYONE WHO CONTRACTS OR RECEIVES COMPENSATION FOR ADVOCATING TO THE COMMISSION, ONE OR MORE COMMISSIONERS, OR THE STAFF CONCERNING THE ADOPTION OF ANY PLAN, AMENDMENT TO A PLAN, PLAN APPROACH, OR MANNER OF COMPLIANCE WITH ANY OF THE PLAN CRITERIA SET FORTH IN THIS SECTION AND SECTIONS 45, 46 AND 47 OF THIS ARTICLE ARE LOBBYISTS WHO MUST REGISTER WITH THE SECRETARY OF STATE AS LOBBYISTS AND ADHERE TO LOBBYIST DISCLOSURE REQUIREMENTS IN STATUTE AND BY RULE SET BY THE SECRETARY OF STATE.

(g) STAFF SHALL REPORT TO THE COMMISSION ANY ATTEMPTS BY ANYONE TO EXERT UNDUE INFLUENCE OVER THE DRAFTING OF PLANS.

(8) (a) THE GOVERNOR SHALL CONVENE THE COMMISSION NO LATER THAN MAY 15 OF THE YEAR FOLLOWING THAT IN WHICH THE FEDERAL CENSUS IS TAKEN, APPOINTING A TEMPORARY

CHAIRPERSON FROM THE COMMISSION'S MEMBERS, WHO ARE APPOINTED IN THE FOLLOWING MANNER:

(I) NO LATER THAN MARCH 17 OF THAT SAME YEAR, THE SPEAKER OF THE COLORADO HOUSE OF REPRESENTATIVES AND THE MINORITY LEADER OF THE SAME SHALL EACH APPOINT TWO MEMBERS IN ACCORDANCE WITH SUBSECTION (2) (b) OF THIS SECTION.

(II) NO LATER THAN MARCH 24 OF THAT SAME YEAR, THE PRESIDENT OF THE COLORADO SENATE AND THE MINORITY LEADER OF THE SAME SHALL EACH APPOINT TWO MEMBERS IN ACCORDANCE WITH SUBSECTION (2) (c) OF THIS SECTION.

(III) (A) THE COLORADO SUPREME COURT NOMINATING COMMISSION, OR ITS SUCCESSOR, SHALL ESTABLISH AND ANNOUNCE A PROCESS FOR THE APPOINTMENT OF MEMBERS IDENTIFIED IN SUBSECTION (2) (a) OF THIS SECTION. THE PROCESS SHALL INCLUDE AN INVITATION TO APPLY FOR THOSE COLORADANS WHO MEET THE IDENTIFIED CRITERIA AND A TIMELINE FOR RECEIVING AND REVIEWING THESE APPLICATIONS.

(B) ON OR BEFORE APRIL 2 OF THAT SAME YEAR, THE SUPREME COURT NOMINATING COMMISSION SHALL FORWARD A LIST OF TEN RECOMMENDED APPLICANTS TO THE EIGHT APPOINTED MEMBERS OF THE COMMISSION. THE RECOMMENDED LIST SHALL, TO THE EXTENT PRACTICAL, REPRESENT COLORADO'S RACIAL, ETHNIC, AND GEOGRAPHIC DIVERSITY. NO LATER THAN APRIL 25 OF THAT SAME YEAR, THE COMMISSIONERS SHALL UNANIMOUSLY APPOINT FOUR MEMBERS FROM THE LIST OF RECOMMENDED APPLICANTS SO THAT THE COMMISSION CONSISTS OF TWELVE MEMBERS.

(C) IF THE COMMISSIONERS FAIL IN THEIR RESPONSIBILITY TO MAKE ANY OF THESE APPOINTMENTS, THE DIRECTOR OF THE GENERAL ASSEMBLY'S NONPARTISAN RESEARCH STAFF, ON APRIL 26 OF THAT SAME YEAR OR THE NEXT BUSINESS DAY THAT FOLLOWS, SHALL, IN A PUBLIC SETTING, RANDOMLY SELECT AS MANY NAMES AS NECESSARY UP TO FOUR NAMES FROM THE LIST OF TEN NAMES RECOMMENDED BY THE SUPREME COURT NOMINATING COMMISSION TO SERVE ON THE COMMISSION SO THAT THE COMMISSION CONSISTS OF TWELVE MEMBERS. IF ANY OF THE GEOGRAPHIC REQUIREMENTS HAVE NOT YET BEEN MET, THE DIRECTOR WILL DISCARD THE MOST RECENT NAME DRAWN AND CONTINUE TO DRAW NAMES AT RANDOM UNTIL A NAME IS DRAWN THAT FULFILLS A REMAINING GEOGRAPHIC REQUIREMENT. THE NAME OF THE PERSON WHO FULFILLS THE NEEDED GEOGRAPHIC REQUIREMENT WILL THEN SERVE ON THE COMMISSION.

(9) IN DRAFTING COMPETITIVE PLANS, THE COMMISSION MEMBERS MUST RELY ON NONPARTISAN STAFF IDENTIFIED FOR SUCH PURPOSE BY THE DIRECTORS OF THE GENERAL ASSEMBLY'S NONPARTISAN RESEARCH AND LEGAL SERVICES, REFERRED TO IN THIS SECTION AND SECTIONS 43.5, 45, 46, 47 AND 48 OF THIS ARTICLE V AS STAFF OR NONPARTISAN STAFF. IN DRAFTING COMPETITIVE PLANS, THE COMMISSION AND ITS STAFF MAY CONSIDER GENERAL ELECTION PERFORMANCE DATA.

SECTION 3. In the constitution of the state of Colorado, **amend** section 45 of article V as follows:

**Section 45. MEMBERS OF CONGRESS AND THE General Assembly**. (1) THE STATE SHALL BE

DIVIDED INTO AS MANY CONGRESSIONAL DISTRICTS AS THERE ARE REPRESENTATIVES IN CONGRESS APPORTIONED TO THIS STATE BY THE CONGRESS OF THE UNITED STATES FOR THE ELECTION OF ONE REPRESENTATIVE TO CONGRESS FROM EACH DISTRICT.

(2) (a) The general assembly shall consist of not more than thirty-five members of the senate and of not more than sixty-five members of the house of representatives, one to be elected from each senatorial and each representative district, respectively.

(b) THE STATE SHALL BE DIVIDED INTO AS MANY SENATORIAL AND REPRESENTATIVE DISTRICTS, KNOWN TOGETHER AS LEGISLATIVE DISTRICTS, AS THERE ARE MEMBERS OF THE SENATE AND HOUSE OF REPRESENTATIVES RESPECTIVELY, EACH DISTRICT IN EACH HOUSE HAVING A POPULATION AS NEARLY EQUAL AS MAY BE, AS REQUIRED BY THE CONSTITUTION OF THE UNITED STATES, BUT IN NO EVENT SHALL THERE BE MORE THAN FIVE PERCENT DEVIATION BETWEEN THE MOST POPULOUS AND THE LEAST POPULOUS DISTRICT IN EACH HOUSE.

SECTION 4.  In the constitution of the state of Colorado, **amend** section 46 of article V as follows:

**Section 46.   CRITERIA — CONGRESSIONAL DISTRICTS.   ~~Senatorial and representative districts.   The state shall be divided into as many senatorial and representative districts as there are members of the senate and house of representatives respectively, each district in each house having a population as nearly equal as may be, as required by the constitution of the United States, but in no event shall there be more than five percent deviation between the most populous and the least populous district in each house.~~**

(1) IN ESTABLISHING CONGRESSIONAL DISTRICTS THE COMMISSION AND NONPARTISAN STAFF:

(a) SHALL UTILIZE THE FOLLOWING FACTORS:

(I) EQUAL POPULATION AS PROVIDED BY LAW;

(II) COMPLIANCE WITH SECTION 2 OF THE FEDERAL "VOTING RIGHTS ACT OF 1965"; AND,

(b) MAY, WITHOUT WEIGHT TO ANY FACTOR, UTILIZE FACTORS INCLUDING, BUT NOT LIMITED TO:

(I) THE PRESERVATION OF POLITICAL SUBDIVISIONS SUCH AS COUNTIES, CITIES, AND TOWNS. WHEN COUNTY, CITY, OR TOWN BOUNDARIES ARE CHANGED, ADJUSTMENTS, IF ANY, IN DISTRICT BOUNDARIES SHALL BE AS PRESCRIBED BY LAW;

(II) THE PRESERVATION OF COMMUNITIES OF INTEREST, INCLUDING ETHNIC, CULTURAL, ECONOMIC, TRADE AREA, GEOGRAPHIC, AND DEMOGRAPHIC FACTORS;

(III) THE COMPACTNESS OF EACH CONGRESSIONAL DISTRICT AND,

(IV) THE MINIMIZATION OF DISRUPTION OF PRIOR DISTRICT LINES.

(c) SHALL, AFTER ADHERING TO THE PROVISIONS OF THIS PARAGRAPH (a) OF THIS SUBSECTION (2) AND CONSIDERING THE PROVISIONS OF PARAGRAPH (b) OF THIS SUBSECTION (2), MAXIMIZE THE NUMBER OF COMPETITIVE CONGRESSIONAL DISTRICTS.

SECTION 5.  In the constitution of the state of Colorado, **amend** section 47 of article V as follows:

**Section 47.** CRITERIA—STATE SENATORIAL AND REPRESENTATIVE DISTRICTS. ~~Composition of districts.~~ (1) Each district shall be as compact in area as possible and the aggregate linear distance of all district boundaries shall be as short as possible. ~~Each district shall consist of contiguous whole general election precincts.~~ Districts of the same house shall BE CONTIGUOUS AND SHALL not overlap.

(2) Except when necessary to meet the equal population requirements of section ~~46~~ 45, no part of one county shall be added to all or part of another county in forming districts. Within counties whose territory is contained in more than one district of the same house, the number of cities and towns whose territory is contained in more than one district of the same house shall be as small as possible. When county, city, or town boundaries are changed, adjustments, if any, in legislative districts shall be as prescribed by law.

(3) Consistent with the provisions of this section and section ~~46~~ 45 of this article, communities of interest, including ethnic, cultural, economic, trade area, geographic, and demographic factors, shall be preserved within a single district wherever possible.

(4) AFTER FOLLOWING SUBSECTIONS 1, 2, AND 3 OF THIS SECTION, AND SECTION 45 OF THIS ARTICLE, THE COMMISSION AND NONPARTISAN STAFF SHALL MAXIMIZE THE NUMBER OF COMPETITIVE SENATORIAL AND REPRESENTATIVE DISTRICTS.

SECTION 6. In the constitution of the state of Colorado, **amend** section 48 of article V as follows:

**Section 48. Revision** ~~and alteration~~ **of districts—**~~reapportionment commission.~~ (1)(a) ~~After each federal census of the United States, the senatorial districts and representative districts shall be established, revised, or altered, and the members of the senate and the house of representatives apportioned among them, by a Colorado reapportionment commission consisting of eleven members, to be appointed and having the qualifications as prescribed in this section. Of such members, four shall be appointed by the legislative department, three by the executive department, and four by the judicial department of the state.~~

~~(b) The four legislative members shall be the speaker of the house of representatives, the minority leader of the house of representatives, and the majority and minority leaders of the senate, or the designee of any such officer to serve in his or her stead, which acceptance of service or designation shall be made no later than April 15 of the year following that in which the federal census is taken. The three executive members shall be appointed by the governor between April 15 and April 25 of such year, and the four judicial members shall be appointed by the chief justice of the Colorado supreme court between April 25 and May 5 of such year.~~

~~(c) Commission members shall be qualified electors of the state of Colorado. No more than four commission members shall be members of the general assembly. No more than six commission members shall be affiliated with the same political party. No more than four commission members shall be residents of the same congressional district,~~

26

and each congressional district shall have at least one resident as a commission member. At least one commission member shall reside west of the continental divide.

(d) Any vacancy created by the death or resignation of a member, or otherwise, shall be filled by the respective appointing authority. Members of the commission shall hold office until their reapportionment and redistricting plan is implemented. No later than May 15 of the year of their appointment, the governor shall convene the commission and appoint a temporary chairman who shall preside until the commission elects its own officers.

(e) Within one hundred thirteen days after the commission has been convened or the necessary census data are available, whichever is later, the commission shall publish a preliminary plan for reapportionment of the members of the general assembly and shall hold public hearings thereon in several places throughout the state within forty-five days after the date of such publication. No later than one hundred twenty-three days prior to the date established in statute for precinct caucuses in the second year following the year in which the census was taken or, if the election laws do not provide for precinct caucuses, no later than one hundred twenty-three days prior to the date established in statute for the event commencing the candidate selection process in such year, the commission shall finalize its plan and submit the same to the Colorado supreme court for review and determination as to compliance with sections 46 and 47 of this article. Such review and determination shall take precedence over other matters before the court. The supreme court shall adopt rules for such proceedings and for the production and presentation of supportive evidence for such plan. Any legal arguments or evidence concerning such plan shall be submitted to the supreme court pursuant to the schedule established by the court; except that the final submission must be made no later than ninety days prior to the date established in statute for precinct caucuses in the second year following the year in which the census was taken or, if the election laws do not provide for precinct caucuses, no later than ninety days prior to the date established in statute for the event commencing the candidate selection process in such year. The supreme court shall either approve the plan or return the plan and the court's reasons for disapproval to the commission. If the plan is returned, the commission shall revise and modify it to conform to the court's requirements and resubmit the plan to the court within the time period specified by the court. The supreme court shall approve a plan for the redrawing of the districts of the members of the general assembly by a date that will allow sufficient time for such plan to be filed with the secretary of state no later than fifty-five days prior to the date established in statute for precinct caucuses in the second year following the year in which the census was taken or, if the election laws do not provide for precinct caucuses, no later than fifty-five days prior to the date established in statute for the event commencing the candidate selection process in such year. The court shall order that such plan be filed with the secretary of state no later than such date. The commission shall keep a public

~~record of all the proceedings of the commission and shall be responsible for the publication and distribution of copies of each plan.~~

(1) (a) (I) WITHIN THIRTY DAYS AFTER THE INDEPENDENT COLORADO REDISTRICTING COMMISSION HAS BEEN CONVENED, OR THE NECESSARY CENSUS DATA ARE AVAILABLE, WHICHEVER IS LATER, STAFF SHALL PUBLISH A PRELIMINARY REDISTRICTING PLAN FOR CONGRESSIONAL DISTRICTS AND, NO LATER THAN FOURTEEN DAYS AFTER THAT, FOR SENATORIAL AND REPRESENTATIVE DISTRICTS OF THE GENERAL ASSEMBLY, REFERRED TO AS LEGISLATIVE DISTRICTS FOR THE PURPOSE OF THIS SECTION. STAFF SHALL KEEP EACH PLAN PREPARED CONFIDENTIAL UNTIL IT HAS BEEN PRESENTED TO THE COMMISSION AT A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION.

(II) WITHIN FORTY-FIVE DAYS AFTER THE DATE OF THE PUBLICATION OF THE PRELIMINARY CONGRESSIONAL PLAN, THE COMMISSION MUST COMPLETE PUBLIC HEARINGS ON THE PRELIMINARY PLANS IN SEVERAL PLACES THROUGHOUT THE STATE, INCLUDING AT LEAST THREE HEARINGS IN EACH OF COLORADO'S CONGRESSIONAL DISTRICTS. INCLUDED IN THESE HEARINGS MUST BE AT LEAST TWO HEARINGS WEST OF THE CONTINENTAL DIVIDE AND AT LEAST TWO HEARINGS SOUTH OF EL PASO COUNTY'S SOUTHERN BOUNDARY AND EAST OF THE CONTINENTAL DIVIDE.

(III) IF, FOR ANY REASON, STAFF IS UNABLE TO PRESENT A PRELIMINARY PLAN TO THE COMMISSION, THE STAFF SHALL PUBLISH THE PRELIMINARY PLANS AND ACCEPT PUBLIC COMMENTS ON THE PLANS PRIOR TO SUBMITTING THE PRELIMINARY PLANS DIRECTLY TO THE SUPREME COURT ON THE LAST BUSINESS DAY PRIOR TO OCTOBER 7 OF THE YEAR FOLLOWING THE YEAR IN WHICH THE FEDERAL CENSUS IS TAKEN. THE COURT'S CONSIDERATION SHALL BE AS TO WHETHER THE PLANS ADHERE TO THE CRITERIA OUTLINED IN THIS SECTION AND SECTIONS 44, 45, 46 AND 47 OF THIS ARTICLE.

(IV) THE COMMISSION SHALL NOT AMEND OR VOTE UPON ANY PRELIMINARY PLAN, BUT MAY INSTRUCT STAFF ON HOW THE PRELIMINARY PLANS CAN BE ADJUSTED DURING THE DEVELOPMENT OF THE INITIAL PLANS.

(b) (I) NO LATER THAN TWENTY DAYS AFTER THE CONCLUSION OF THE LAST PUBLIC HEARING, THE STAFF SHALL SUBMIT INITIAL PLANS TO THE COMMISSION FOR ITS CONSIDERATION. THE COMMISSION MUST VOTE ON THE PLANS NOT LESS THAN SEVEN DAYS AFTER THEIR SUBMISSION. IF THE COMMISSION VOTES ON AN INITIAL PLAN AND DOES NOT APPROVE THE PLAN, THE COMMISSION SHALL PROMPTLY PUBLISH AND PROVIDE THE STAFF WRITTEN REASONS WHY THE PLAN WAS NOT APPROVED.

(II) IF THE COMMISSION REJECTS A PLAN PURSUANT TO SUBPARAGRAPH (I) OF THIS PARAGRAPH (b), THE STAFF MUST PREPARE A SECOND PLAN, ADJUSTING THE PLAN ACCORDING TO THE REASONS CITED BY THE COMMISSION FOR DISAPPROVAL OF THE INITIAL PLAN. IF A SECOND PLAN IS REQUIRED UNDER THIS SUBPARAGRAPH (II), THE PLAN MUST BE SUBMITTED TO THE COMMISSION WITHIN TEN DAYS OF THE COMMISSION'S VOTE ON THE PREVIOUS PLAN. THE COMMISSION MUST VOTE ON THE PLAN NOT LESS THAN SEVEN DAYS AFTER THE PLAN'S SUBMISSION. IF THE COMMISSION VOTES ON A PLAN PURSUANT TO THIS SUBPARAGRAPH (II) AND DOES NOT APPROVE THE PLAN, THE COMMISSION SHALL PROMPTLY PUBLISH AND PROVIDE THE STAFF WRITTEN REASONS WHY THE PLAN WAS NOT APPROVED.

(III) IF THE COMMISSION REJECTS A PLAN PURSUANT TO SUBPARAGRAPH (II) OF THIS PARAGRAPH (b), THE STAFF MUST PREPARE A THIRD PLAN, ADJUSTING THE PLAN ACCORDING TO THE REASONS CITED BY THE COMMISSION FOR DISAPPROVAL OF THE SECOND PLAN. IF A THIRD PLAN IS REQUIRED UNDER THIS SUBPARAGRAPH (III), THE PLAN MUST BE SUBMITTED TO THE COMMISSION WITHIN TEN DAYS OF THE COMMISSION'S VOTE ON THE PREVIOUS PLAN. THE COMMISSION MUST VOTE ON THE PLAN NOT LESS THAN SEVEN DAYS AFTER THE PLAN'S SUBMISSION. IF THE COMMISSION VOTES ON A PLAN PURSUANT TO THIS SUBPARAGRAPH (III) AND DOES NOT APPROVE THE PLAN, THE COMMISSION SHALL PROMPTLY PUBLISH AND PROVIDE THE STAFF WRITTEN REASONS WHY THE PLAN WAS NOT APPROVED.

(IV) IF THE COMMISSION DOES NOT APPROVE PLANS FOR STATE SENATORIAL AND REPRESENTATIVE DISTRICTS PURSUANT TO SUBPARAGRAPHS (I), (II), OR (III) OF THIS PARAGRAPH (b), THE COMMISSION MUST SUBMIT THE UNAMENDED SECOND PLAN TO THE SUPREME COURT AS SPECIFIED IN SUBSECTION (2) OF THIS SECTION. IF SUCH A PLAN IS NOT DRAFTED PURSUANT TO SUBPARAGRAPHS (I), (II) OR (III), THE COMMISSION MUST SUBMIT THE UNAMENDED INITIAL PLAN TO THE SUPREME COURT AS SPECIFIED IN SUBSECTION (2) OF THIS SECTION.

(2) (a) (I) NO LATER THAN OCTOBER 6 OF THAT SAME YEAR, THE COMMISSION MUST FINALIZE EACH PLAN. THE COMMISSION MAY ADJUST THE DEADLINES SPECIFIED IN SUBSECTION (1) OF THIS SECTION IF CONDITIONS OUTSIDE OF THE COMMISSION'S CONTROL REQUIRE SUCH AN ADJUSTMENT TO ENSURE FINALIZING EACH PLAN AS REQUIRED BY THIS SUBSECTION.

(II) THE COMMISSION MAY GRANT STAFF THE ABILITY TO MAKE TECHNICAL, DE MINIMUS ADJUSTMENTS TO ANY PLAN PRIOR TO ITS SUBMISSION TO THE SUPREME COURT.

(b) (I) THE COMMISSION MUST PROMPTLY SUBMIT THE PLANS TO THE SUPREME COURT FOR REVIEW AND DETERMINATION AS TO WHETHER THE PLANS COMPLY WITH SECTIONS 44, 45, 46 AND 47 AND THIS SECTION OF ARTICLE V. SUCH REVIEW AND DETERMINATION TAKES PRECEDENCE OVER THE OTHER MATTERS BEFORE THE COURT.

(II) THE SUPREME COURT MUST ADOPT RULES FOR SUCH PROCEEDINGS AND FOR THE PRODUCTION AND PRESENTATION OF SUPPORTIVE EVIDENCE FOR THE PLANS. LEGAL ARGUMENTS OR EVIDENCE CONCERNING THE PLANS MUST BE SUBMITTED TO THE COURT PURSUANT TO THE SCHEDULE ESTABLISHED BY THE COURT, EXCEPT THAT THE FINAL SUBMISSION MUST BE MADE NO LATER THAN OCTOBER 20 OF THAT SAME YEAR.

(c) (I) THE SUPREME COURT MUST EITHER APPROVE THE PLANS OR RETURN ONE OR MORE PLANS AND THE COURT'S REASONS FOR DISAPPROVAL TO THE COMMISSION. IF A PLAN IS RETURNED, STAFF WILL PREPARE FOR THE COMMISSION'S CONSIDERATION A PLAN TO CONFORM TO THE COURT'S REQUIREMENTS. THE COMMISSION MAY REQUEST THAT STAFF MAKE ADJUSTMENTS TO THE CONFORMING PLAN. AN APPROVED, CONFORMING PLAN MUST BE SUBMITTED TO THE COURT WITHIN THE TIME PERIOD SPECIFIED BY THE COURT. ADOPTION OF A PLAN PURSUANT TO THIS PARAGRAPH REQUIRES THE AFFIRMATIVE VOTE OF AT LEAST EIGHT COMMISSIONERS.

(II) IF THE COMMISSION HAS NOT ADOPTED PLANS FOR STATE SENATORIAL AND REPRESENTATIVE DISTRICTS WITHIN THE TIME PERIOD SPECIFIED BY THE COURT FOR THE COMMISSION TO ACT, THE STAFF SHALL PREPARE AND SUBMIT THE UNAMENDED CONFORMING

PLAN TO THE COURT WITHIN THE TIME PERIOD SPECIFIED BY THE COURT FOR THE COMMISSION TO ACT.

(III) THE SUPREME COURT MUST APPROVE EACH REDISTRICTING PLAN BY A DATE THAT WILL ALLOW SUFFICIENT TIME FOR THE PLANS TO BE FILED WITH THE SECRETARY OF STATE NO LATER THAN DECEMBER 15 OF THAT SAME YEAR. THE COURT MUST ORDER THAT EACH PLAN BE FILED WITH THE SECRETARY OF STATE NO LATER THAN SUCH DATE.

(f)(3) The general assembly shall appropriate sufficient funds for the compensation and payment of the expenses of the commission members and any staff employed by it. The commission shall have access to statistical information compiled by the state or its political subdivisions and necessary for its reapportionment REDISTRICTING duties.

**Proposed Initiative 2015–2016 #132**

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning redistricting in Colorado, and, in connection therewith, replacing the Colorado reapportionment commission with a Colorado redistricting commission; directing that the commission redistrict congressional districts and state legislative districts; requiring the appointment of 12 commissioners, of whom at least 4 must be either a member of a minor political party or unaffiliated with any political party; prohibiting commissioners from being lobbyists or members of or candidates for either Congress or the state legislature; requiring the agreement of at least 8 of 12 commissioners to approve any action of the commission; adopting existing criteria for congressional districts and adding competitiveness to the criteria for state legislative and congressional districts; requiring that only the nonpartisan staff of the commission may submit plans to the commission; and requiring that the commission's work be done in public meetings.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning redistricting in Colorado, and, in connection therewith, replacing the Colorado reapportionment commission with a Colorado redistricting commission; directing that the commission redistrict congressional districts and state legislative districts; requiring the appointment of 12 commissioners, of whom at least 4 must be either a member of a minor political party or unaffiliated with any political party; prohibiting commissioners from being lobbyists or members of or candidates for either Congress or the state legislature; requiring the agreement of at least 8 of 12 commissioners to approve any action of the commission; adopting existing criteria for congressional districts and adding competitiveness to the criteria for state legislative and congressional districts; requiring that only the nonpartisan staff of the commission may submit plans to the commission; and requiring that the commission's work be done in public meetings?

Be it Enacted by the People of the State of Colorado:

SECTION 1.  In the constitution of the state of Colorado, **amend** section 44 to article V as follows:

Congressional and Legislative Appointments

**Section 44.  POLITICAL GERRYMANDERING PROHIBITED.  ~~Representatives in congress.~~** ~~The general assembly shall divide the state into as many congressional districts as there are representatives in congress apportioned to this state by the congress of the United States for the election of one representative to congress from each district.  When a new apportionment shall be made by congress, the general assembly shall divide the state into congressional districts accordingly.~~
THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE THAT FAIR REPRESENTATION REQUIRES THAT THE PRACTICE OF POLITICAL GERRYMANDERING, WHEREBY STATE SENATE AND STATE REPRESENTATIVE DISTRICTS ARE PURPOSEFULLY DRAWN TO FAVOR ONE POLITICAL PARTY OR INCUMBENT POLITICIAN OVER ANOTHER, OR TO ACCOMPLISH POLITICAL GOALS, MUST END.  THE PUBLIC'S INTEREST IN PROHIBITING POLITICAL GERRYMANDERING AND IN CREATING FAIR AND COMPETITIVE PLANS FOR STATE SENATORIAL AND STATE REPRESENTATIVE DISTRICTS IS BEST ACCOMPLISHED BY A NEW AND INDEPENDENT COMMISSION OF BALANCED APPOINTMENTS THAT IS FREE FROM POLITICAL INFLUENCE AND RELIES ON NONPARTISAN LEGISLATIVE STAFF TO DIVIDE THE STATE INTO THESE DISTRICTS WITHOUT REGARD TO POLITICAL PRESSURES OR POLITICAL CONSIDERATIONS.

SECTION 2.  In the constitution of the state of Colorado, **amend** section 45 of article V as follows:

**Section 45.  INDEPENDENT COLORADO LEGISLATIVE REDISTRICTING COMMISSION.  ~~General Assembly.~~** ~~The general assembly shall consist of not more than thirty-five members of the senate and of not more than sixty-five members of the house of representatives, one to be elected from each senatorial and each representative district, respectively.~~
(1) AFTER EACH FEDERAL CENSUS OF THE UNITED STATES, THE INDEPENDENT COLORADO LEGISLATIVE REDISTRICTING COMMISSION SHALL MEET, IN OPEN MEETINGS AND SUBJECT TO OPEN MEETINGS AND PUBLIC DISCLOSURE LAWS, TO ADOPT COMPETITIVE PLANS FOR STATE SENATE DISTRICTS AND STATE REPRESENTATIVE DISTRICTS AS IDENTIFIED BY SECTION 46 OF THIS ARTICLE V.  THE COMMISSION MUST HOLD MEETINGS THROUGHOUT THE STATE AND CONDUCT ALL OF ITS ACTIVITIES IN PLACES WHERE MEMBERS OF THE PUBLIC ARE INVITED TO ATTEND.  THE COMMISSION OR ITS STAFF SHALL NOT DRAW OR ADOPT ANY PLAN FOR THE PURPOSE OF FAVORING A POLITICAL PARTY, INCUMBENT MEMBER OF THE GENERAL ASSEMBLY, MEMBER OF CONGRESS, OR OTHER PERSON.

(2) THE COMMISSION SHALL CONSIST OF TWELVE MEMBERS WHO HAVE THE FOLLOWING QUALIFICATIONS:

(a) FOUR MEMBERS WHO ARE UNAFFILIATED, NOT HAVING BEEN REGISTERED WITH ANY POLITICAL PARTY FOR A PERIOD OF AT LEAST TWO CALENDAR YEARS PRIOR TO THE MEMBER'S APPOINTMENT, OR ARE REGISTERED WITH A MINOR POLITICAL PARTY, HAVING BEEN REGISTERED WITH THAT PARTY FOR A PERIOD OF AT LEAST TWO CALENDAR YEARS PRIOR TO THE MEMBER'S APPOINTMENT.

(b) FOUR MEMBERS REGISTERED WITH ONE OF THE STATE'S TWO LARGEST POLITICAL PARTIES.

(c) FOUR MEMBERS REGISTERED WITH ANY POLITICAL PARTY, OR WHO ARE UNAFFILIATED, SO LONG AS NO POLITICAL PARTY HAS A MAJORITY OF MEMBERS ON THE COMMISSION.

(3) NO MEMBER OF THE COMMISSION MAY BE A REGISTERED LOBBYIST, INCUMBENT MEMBER OF THE GENERAL ASSEMBLY OR CONGRESS, OR A CURRENT CANDIDATE FOR ONE OF THESE OFFICES. ALL COMMISSION MEMBERS MUST BE QUALIFIED ELECTORS OF THE STATE OF COLORADO.

(4) AT LEAST ONE MEMBER OF THE COMMISSION SHALL BE APPOINTED FROM EACH CONGRESSIONAL DISTRICT, SO LONG AS COLORADO IS NOT APPORTIONED MORE THAN TWELVE CONGRESSIONAL DISTRICTS. NO MORE THAN THREE MEMBERS MAY COME FROM ANY SINGLE CONGRESSIONAL DISTRICT. AT LEAST ONE MEMBER SHALL RESIDE WEST OF THE CONTINENTAL DIVIDE, AND AT LEAST ONE MEMBER SHALL RESIDE SOUTH OF EL PASO COUNTY'S SOUTHERN BOUNDARY AND EAST OF THE CONTINENTAL DIVIDE.

(5) ANY MOTION ADOPTED BY THE COMMISSION, INCLUDING THE ELECTION OF ITS OFFICERS AND APPROVAL OF ANY PLAN, REQUIRES THE AFFIRMATIVE VOTE OF AT LEAST EIGHT COMMISSION MEMBERS.

(6) EXCEPT AS TO MATTERS OTHERWISE PROVIDED FOR IN THIS SECTION AND SECTIONS 46, 47 AND 48, THE COMMISSION SHALL ADOPT RULES TO GOVERN ITS ADMINISTRATION AND OPERATION INCLUDING, BUT NOT LIMITED TO, THE FOLLOWING:

(a) MAINTENANCE OF A RECORD OF THE COMMISSION'S ACTIVITIES AND PROCEEDINGS, INCLUDING A RECORD OF WRITTEN AND ORAL TESTIMONY RECEIVED, AND OF THE COMMISSION'S DIRECTION TO NONPARTISAN STAFF ON PROPOSED CHANGES TO ANY PLAN AND THE COMMISSION'S RATIONALE FOR SUCH CHANGES;

(b) THE PROCESS FOR REMOVAL OF MEMBERS FOR VIOLATING PUBLIC DISCLOSURE OR OPEN MEETINGS PROVISIONS OF THIS ARTICLE OR CONDUCTING PROHIBITED COMMUNICATIONS UNDER THIS ARTICLE;

(c) THE PROCESS FOR RECOMMENDING CHANGES TO PLANS SUBMITTED TO THE COMMISSION BY NONPARTISAN STAFF;

(d) PROVIDING FOR ANY VACANCY CREATED BY THE DEATH, RESIGNATION OR REMOVAL OF A MEMBER, OR OTHERWISE, WHICH MUST BE FILLED BY THE RESPECTIVE APPOINTING AUTHORITY. MEMBERS OF THE COMMISSION SHALL HOLD OFFICE UNTIL A REDISTRICTING PLAN IS IMPLEMENTED, OR OTHERWISE REMOVED;

(e) THE PROCESS BY WHICH EACH COMMISSIONER SHALL REPORT COMMUNICATIONS RELATED TO THE MAPPING OF LEGISLATIVE DISTRICTS MADE OUTSIDE OF A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION; AND,

(f) THE ADOPTION OF A STATEWIDE MEETING AND HEARING SCHEDULE.

(7) (a) THE COMMISSION IS SUBJECT TO COLORADO STATUTORY PROVISIONS CONCERNING OPEN MEETINGS, OPEN RECORDS AND DISCLOSURE BY PUBLIC OFFICIALS, GENERALLY REFERRED TO AS COLORADO SUNSHINE LAWS, AS AMENDED FROM TIME TO TIME BY THE GENERAL ASSEMBLY, AND THE COMMISSIONERS ARE CONSIDERED PUBLIC OFFICIALS FOR THESE PURPOSES. FOR THE PURPOSE OF THIS COMMISSION, PROPER NOTICE FOR A MEETING OR HEARING, INCLUDING TIME, PLACE, AND AGENDA, MUST BE POSTED AT LEAST THREE DAYS PRIOR TO THE MEETING ON A WEB SITE DEDICATED FOR THE COMMISSION AND FOR THE PURPOSE OF REDISTRICTING.

(b) A COMMISSIONER WHO ENGAGES IN COMMUNICATIONS, IF THE COMMUNICATIONS ARE MADE OUTSIDE OF A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION AND ARE RELATED TO THE MAPPING OF LEGISLATIVE DISTRICTS, SHALL DISCLOSE, AT EACH MEETING, THE NAMES OF THE INDIVIDUALS WITH WHOM THE COMMISSIONER COMMUNICATED AND THE PURPOSE AND SUBJECT OF THE COMMUNICATION.

(c) COMMISSIONERS MAY COMMUNICATE WITH ONE ANOTHER ABOUT THE MAPPING OF LEGISLATIVE DISTRICTS, PROVIDED THAT COMMUNICATION BETWEEN MORE THAN THREE COMMISSIONERS AT ONE TIME MUST BE PROPERLY NOTICED PURSUANT TO THIS SUBSECTION (7). EXCEPT FOR TECHNICAL AND OPERATIONAL MATTERS, AND PREPARING AMENDMENTS DEVELOPED BY A COMMISSIONER FOR THE COMMISSION'S CONSIDERATION, COMMISSIONERS MAY NOT COMMUNICATE WITH STAFF ON THE MAPPING OF LEGISLATIVE DISTRICTS UNLESS THE COMMUNICATION IS DURING A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION.

(d) STAFF ARE NOT PERMITTED TO HAVE EX PARTE COMMUNICATIONS ABOUT THE CONTENT OR DEVELOPMENT OF ANY PLAN. COMMUNICATIONS TO AND FROM STAFF RELATED TO ADMINISTRATIVE, TECHNICAL AND OPERATIONAL MATTERS ON THE MAPPING OF LEGISLATIVE DISTRICTS AND GENERAL DISCUSSIONS ABOUT THE REDISTRICTING PROCESS ARE NOT PROHIBITED. WORK PRODUCT AND COMMUNICATIONS BETWEEN STAFF SHALL BE SUBJECT TO DISCLOSURE UNDER COLORADO OPEN RECORDS LAWS ONCE A PLAN TO WHICH THE WORK PRODUCT OR COMMUNICATION PERTAINS IS PRESENTED TO THE COMMISSION DURING A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION. AT THE DIRECTION OF THE COMMISSION, STAFF MAY CONSULT WITH EXPERTS RETAINED BY THE COMMISSION.

(e) ANY COMMISSIONER WHO PARTICIPATES IN A COMMUNICATION PROHIBITED IN SUBSECTION (7) WILL BE REMOVED FROM THE COMMISSION AND REPLACED WITHIN SEVEN DAYS ACCORDING TO COMMISSION RULES.

(f) ANYONE WHO CONTRACTS OR RECEIVES COMPENSATION FOR ADVOCATING TO THE COMMISSION, ONE OR MORE COMMISSIONERS, OR THE STAFF CONCERNING THE ADOPTION OF ANY PLAN, AMENDMENT TO A PLAN, PLAN APPROACH, OR MANNER OF COMPLIANCE WITH ANY OF THE PLAN CRITERIA SET FORTH IN THIS SECTION AND SECTIONS 46, 47 AND 48 OF THIS ARTICLE ARE LOBBYISTS WHO MUST REGISTER WITH THE SECRETARY OF STATE AS LOBBYISTS AND ADHERE TO LOBBYIST DISCLOSURE REQUIREMENTS IN STATUTE AND BY RULE SET BY THE SECRETARY OF STATE.

(g) STAFF SHALL REPORT TO THE COMMISSION ANY ATTEMPTS BY ANYONE TO EXERT UNDUE INFLUENCE OVER THE DRAFTING OF PLANS.

(8) (a) THE GOVERNOR SHALL CONVENE THE COMMISSION NO LATER THAN MAY 15 OF THE YEAR FOLLOWING THAT IN WHICH THE FEDERAL CENSUS IS TAKEN, APPOINTING A TEMPORARY

CHAIRPERSON FROM THE COMMISSION'S MEMBERS, WHO ARE APPOINTED IN THE FOLLOWING MANNER:

(I) NO LATER THAN MARCH 17 OF THAT SAME YEAR, THE SPEAKER OF THE COLORADO HOUSE OF REPRESENTATIVES AND THE MINORITY LEADER OF THE SAME SHALL EACH APPOINT TWO MEMBERS IN ACCORDANCE WITH SUBSECTION (2) (b) OF THIS SECTION.

(II) NO LATER THAN MARCH 24 OF THAT SAME YEAR, THE PRESIDENT OF THE COLORADO SENATE AND THE MINORITY LEADER OF THE SAME SHALL EACH APPOINT TWO MEMBERS IN ACCORDANCE WITH SUBSECTION (2) (c) OF THIS SECTION.

(III) (A) THE COLORADO SUPREME COURT NOMINATING COMMISSION, OR ITS SUCCESSOR, SHALL ESTABLISH AND ANNOUNCE A PROCESS FOR THE APPOINTMENT OF MEMBERS IDENTIFIED IN SUBSECTION (2) (a) OF THIS SECTION. THE PROCESS SHALL INCLUDE AN INVITATION TO APPLY FOR THOSE COLORADANS WHO MEET THE IDENTIFIED CRITERIA AND A TIMELINE FOR RECEIVING AND REVIEWING THESE APPLICATIONS.

(B) ON OR BEFORE APRIL 2 OF THAT SAME YEAR, THE SUPREME COURT NOMINATING COMMISSION SHALL FORWARD A LIST OF 10 RECOMMENDED APPLICANTS TO THE EIGHT APPOINTED MEMBERS OF THE COMMISSION. THE RECOMMENDED LIST SHALL, TO THE EXTENT PRACTICAL, REPRESENT COLORADO'S RACIAL, ETHNIC, AND GEOGRAPHIC DIVERSITY. NO LATER THAN APRIL 25 OF THAT SAME YEAR, THE COMMISSIONERS SHALL UNANIMOUSLY APPOINT FOUR MEMBERS FROM THE LIST OF RECOMMENDED APPLICANTS SO THAT THE COMMISSION CONSISTS OF TWELVE MEMBERS.

(C) IF THE COMMISSIONERS FAIL IN THEIR RESPONSIBILITY TO MAKE ANY OF THESE APPOINTMENTS, THE DIRECTOR OF THE GENERAL ASSEMBLY'S NONPARTISAN RESEARCH STAFF, ON APRIL 26 OF THAT SAME YEAR OR THE NEXT BUSINESS DAY THAT FOLLOWS AND IN A PUBLIC SETTING, SHALL RANDOMLY SELECT AS MANY NAMES AS NECESSARY UP TO FOUR NAMES FROM THE LIST OF TEN NAMES RECOMMENDED BY THE SUPREME COURT NOMINATING COMMISSION TO SERVE ON THE COMMISSION SO THAT THE COMMISSION CONSISTS OF TWELVE MEMBERS. IF ANY OF THE GEOGRAPHIC REQUIREMENTS HAVE NOT YET BEEN MET, THE DIRECTOR WILL DISCARD THE MOST RECENT NAME DRAWN AND CONTINUE TO DRAW NAMES AT RANDOM UNTIL A NAME IS DRAWN THAT FULFILLS A REMAINING GEOGRAPHIC REQUIREMENT. THE NAME OF THE PERSON WHO FULFILLS THE NEEDED GEOGRAPHIC REQUIREMENT WILL THEN SERVE ON THE COMMISSION.

(9) IN DRAFTING COMPETITIVE PLANS, THE COMMISSION MEMBERS MUST RELY ON NONPARTISAN STAFF IDENTIFIED FOR SUCH PURPOSE BY THE DIRECTORS OF THE GENERAL ASSEMBLY'S NONPARTISAN RESEARCH AND LEGAL SERVICES, REFERRED TO IN THIS SECTION AND SECTIONS 44, 47 AND 48 OF THIS ARTICLE V AS STAFF OR NONPARTISAN STAFF. IN DRAFTING COMPETITIVE PLANS, THE COMMISSION AND ITS STAFF MAY CONSIDER GENERAL ELECTION PERFORMANCE DATA.

SECTION 3. In the constitution of the state of Colorado, **amend** section 46 of article V as follows:

**Section 46. CONGRESSIONAL, ~~S~~senatorial and representative districts.**

(1) THE GENERAL ASSEMBLY SHALL CONSIST OF NOT MORE THAN THIRTY-FIVE MEMBERS OF THE SENATE AND OF NOT MORE THAN SIXTY-FIVE MEMBERS OF THE HOUSE OF REPRESENTATIVES, ONE TO BE ELECTED FROM EACH SENATORIAL AND EACH REPRESENTATIVE DISTRICT, RESPECTIVELY. The state shall be divided into as many senatorial and representative districts as there are members of the senate and house of representatives respectively, each district in each house having a population as nearly equal as may be, as required by the constitution of the United States, but in no event shall there be more than five percent deviation between the most populous and the least populous district in each house.

(2) THE GENERAL ASSEMBLY SHALL DIVIDE THE STATE INTO AS MANY CONGRESSIONAL DISTRICTS AS THERE ARE REPRESENTATIVES IN CONGRESS APPORTIONED TO THIS STATE BY THE CONGRESS OF THE UNITED STATES FOR THE ELECTION OF ONE REPRESENTATIVE TO CONGRESS FROM EACH DISTRICT. WHEN A NEW APPORTIONMENT SHALL BE MADE BY CONGRESS, THE GENERAL ASSEMBLY SHALL DIVIDE THE STATE INTO CONGRESSIONAL DISTRICTS ACCORDINGLY.

SECTION 4. In the constitution of the state of Colorado, **amend** section 47 of article V as follows:

**Section 47.** CRITERIA—STATE SENATORIAL AND REPRESENTATIVE DISTRICTS. ~~Composition of districts.~~ (1) Each district shall be as compact in area as possible and the aggregate linear distance of all district boundaries shall be as short as possible. ~~Each district shall consist of contiguous whole general election precincts.~~ Districts of the same house shall BE CONTIGUOUS AND SHALL not overlap.

(2) Except when necessary to meet the equal population requirements of section ~~46~~ 46, no part of one county shall be added to all or part of another county in forming districts. Within counties whose territory is contained in more than one district of the same house, the number of cities and towns whose territory is contained in more than one district of the same house shall be as small as possible. When county, city, or town boundaries are changed, adjustments, if any, in legislative districts shall be as prescribed by law.

(3) Consistent with the provisions of this section and section 46 of this article, communities of interest, including ethnic, cultural, economic, trade area, geographic, and demographic factors, shall be preserved within a single district wherever possible.

(4) AFTER FOLLOWING SUBSECTIONS 1, 2, AND 3 OF THIS SECTION, AND SECTION 46 OF THIS ARTICLE, THE COMMISSION AND NONPARTISAN STAFF SHALL MAXIMIZE THE NUMBER OF COMPETITIVE SENATORIAL AND REPRESENTATIVE DISTRICTS.

SECTION 5. In the constitution of the state of Colorado, **amend** section 48 of article V as follows:

**Section 48.** Revisions TO ~~and alteration of~~ SENATORIAL AND REPRESENTATIVE ~~districts—reapportionment commission.~~ ~~(1)(a) After each federal census of the United States, the senatorial districts and representative districts shall be established, revised,~~

36

or altered, and the members of the senate and the house of representatives apportioned among them, by a Colorado reapportionment commission consisting of eleven members, to be appointed and having the qualifications as prescribed in this section. Of such members, four shall be appointed by the legislative department, three by the executive department, and four by the judicial department of the state.

(b) The four legislative members shall be the speaker of the house of representatives, the minority leader of the house of representatives, and the majority and minority leaders of the senate, or the designee of any such officer to serve in his or her stead, which acceptance of service or designation shall be made no later than April 15 of the year following that in which the federal census is taken. The three executive members shall be appointed by the governor between April 15 and April 25 of such year, and the four judicial members shall be appointed by the chief justice of the Colorado supreme court between April 25 and May 5 of such year.

(c) Commission members shall be qualified electors of the state of Colorado. No more than four commission members shall be members of the general assembly. No more than six commission members shall be affiliated with the same political party. No more than four commission members shall be residents of the same congressional district, and each congressional district shall have at least one resident as a commission member. At least one commission member shall reside west of the continental divide.

(d) Any vacancy created by the death or resignation of a member, or otherwise, shall be filled by the respective appointing authority. Members of the commission shall hold office until their reapportionment and redistricting plan is implemented. No later than May 15 of the year of their appointment, the governor shall convene the commission and appoint a temporary chairman who shall preside until the commission elects its own officers.

(e) Within one hundred thirteen days after the commission has been convened or the necessary census data are available, whichever is later, the commission shall publish a preliminary plan for reapportionment of the members of the general assembly and shall hold public hearings thereon in several places throughout the state within forty-five days after the date of such publication. No later than one hundred twenty-three days prior to the date established in statute for precinct caucuses in the second year following the year in which the census was taken or, if the election laws do not provide for precinct caucuses, no later than one hundred twenty-three days prior to the date established in statute for the event commencing the candidate selection process in such year, the commission shall finalize its plan and submit the same to the Colorado supreme court for review and determination as to compliance with sections 46 and 47 of this article. Such review and determination shall take precedence over other matters before the court. The supreme court shall adopt rules for such proceedings and for the production and presentation of supportive evidence for such plan. Any legal arguments or evidence concerning such plan shall be submitted to the supreme court pursuant to the schedule established by the court; except that the final submission must

be made no later than ninety days prior to the date established in statute for precinct caucuses in the second year following the year in which the census was taken or, if the election laws do not provide for precinct caucuses, no later than ninety days prior to the date established in statute for the event commencing the candidate selection process in such year. The supreme court shall either approve the plan or return the plan and the court's reasons for disapproval to the commission. If the plan is returned, the commission shall revise and modify it to conform to the court's requirements and resubmit the plan to the court within the time period specified by the court. The supreme court shall approve a plan for the redrawing of the districts of the members of the general assembly by a date that will allow sufficient time for such plan to be filed with the secretary of state no later than fifty-five days prior to the date established in statute for precinct caucuses in the second year following the year in which the census was taken or, if the election laws do not provide for precinct caucuses, no later than fifty-five days prior to the date established in statute for the event commencing the candidate selection process in such year. The court shall order that such plan be filed with the secretary of state no later than such date. The commission shall keep a public record of all the proceedings of the commission and shall be responsible for the publication and distribution of copies of each plan.

(1) (a) (I) WITHIN FORTY DAYS AFTER THE INDEPENDENT COLORADO LEGISLATIVE REDISTRICTING COMMISSION HAS BEEN CONVENED, OR THE NECESSARY CENSUS DATA ARE AVAILABLE, WHICHEVER IS LATER, STAFF SHALL PUBLISH A PRELIMINARY REDISTRICTING PLAN FOR SENATORIAL AND REPRESENTATIVE DISTRICTS OF THE GENERAL ASSEMBLY, REFERRED TO AS LEGISLATIVE DISTRICTS FOR THE PURPOSE OF THIS SECTION. STAFF SHALL KEEP EACH PLAN PREPARED CONFIDENTIAL UNTIL IT HAS BEEN PRESENTED TO THE COMMISSION AT A PROPERLY NOTICED MEETING OR HEARING OF THE COMMISSION.

(II) WITHIN FORTY-FIVE DAYS AFTER THE DATE OF THE PUBLICATION OF THE PRELIMINARY PLANS, THE COMMISSION MUST COMPLETE PUBLIC HEARINGS ON THE PRELIMINARY PLANS IN SEVERAL PLACES THROUGHOUT THE STATE, INCLUDING AT LEAST THREE HEARINGS IN EACH OF COLORADO'S CONGRESSIONAL DISTRICTS. INCLUDED IN THESE HEARINGS MUST BE AT LEAST TWO HEARINGS WEST OF THE CONTINENTAL DIVIDE AND AT LEAST TWO HEARINGS SOUTH OF EL PASO COUNTY'S SOUTHERN BOUNDARY AND EAST OF THE CONTINENTAL DIVIDE.

(III) IF, FOR ANY REASON, STAFF IS UNABLE TO PRESENT PRELIMINARY PLANS TO THE COMMISSION, THE STAFF SHALL PUBLISH THE PRELIMINARY PLANS AND ACCEPT PUBLIC COMMENTS ON THE PLANS PRIOR TO SUBMITTING THE PRELIMINARY PLANS DIRECTLY TO THE SUPREME COURT ON THE LAST BUSINESS DAY PRIOR TO OCTOBER 7 OF THE YEAR FOLLOWING THE YEAR IN WHICH THE FEDERAL CENSUS IS TAKEN. THE COURT'S CONSIDERATION SHALL BE AS TO WHETHER THE PLANS ADHERE TO THE CRITERIA OUTLINED IN THIS SECTION AND SECTIONS 45, 46 AND 47 OF THIS ARTICLE.

(IV) THE COMMISSION SHALL NOT AMEND OR VOTE UPON ANY PRELIMINARY PLAN, BUT MAY INSTRUCT STAFF ON HOW THE PRELIMINARY PLANS CAN BE ADJUSTED DURING THE DEVELOPMENT OF THE INITIAL PLANS.

(b) (I) NO LATER THAN TWENTY DAYS AFTER THE CONCLUSION OF THE LAST PUBLIC HEARING, THE STAFF SHALL SUBMIT INITIAL PLANS TO THE COMMISSION FOR ITS CONSIDERATION. THE COMMISSION MUST VOTE ON THE PLANS NOT LESS THAN SEVEN DAYS AFTER THEIR SUBMISSION. IF THE COMMISSION VOTES ON AN INITIAL PLAN AND DOES NOT APPROVE THE PLAN, THE COMMISSION SHALL PROMPTLY PUBLISH AND PROVIDE THE STAFF WRITTEN REASONS WHY THE PLAN WAS NOT APPROVED.

(II) IF THE COMMISSION REJECTS A PLAN PURSUANT TO SUBPARAGRAPH (I) OF PARAGRAPH (b) OF THIS SUBSECTION (1), THE STAFF MUST PREPARE A SECOND PLAN, ADJUSTING THE PLAN ACCORDING TO THE REASONS CITED BY THE COMMISSION FOR DISAPPROVAL OF THE INITIAL PLAN. IF A SECOND PLAN IS REQUIRED UNDER THIS SUBPARAGRAPH (II), THE PLAN MUST BE SUBMITTED TO THE COMMISSION WITHIN TEN DAYS OF THE COMMISSION'S VOTE ON THE PREVIOUS PLAN. THE COMMISSION MUST VOTE ON THE PLAN NOT LESS THAN SEVEN DAYS AFTER THE PLAN'S SUBMISSION. IF THE COMMISSION VOTES ON A PLAN PURSUANT TO THIS SUBPARAGRAPH (II) AND DOES NOT APPROVE THE PLAN, THE COMMISSION SHALL PROMPTLY PUBLISH AND PROVIDE THE STAFF WRITTEN REASONS WHY THE PLAN WAS NOT APPROVED.

(III) IF THE COMMISSION REJECTS A PLAN PURSUANT TO SUBPARAGRAPH (II) OF PARAGRAPH (b) OF THIS SUBSECTION (1), THE STAFF MUST PREPARE A THIRD PLAN, ADJUSTING THE PLAN ACCORDING TO THE REASONS CITED BY THE COMMISSION FOR DISAPPROVAL OF THE SECOND PLAN. IF A THIRD PLAN IS REQUIRED UNDER THIS SUBPARAGRAPH (III), THE PLAN MUST BE SUBMITTED TO THE COMMISSION WITHIN TEN DAYS OF THE COMMISSION'S VOTE ON THE PREVIOUS PLAN. THE COMMISSION MUST VOTE ON THE PLAN NOT LESS THAN SEVEN DAYS AFTER THE PLAN'S SUBMISSION. IF THE COMMISSION VOTES ON A PLAN PURSUANT TO THIS SUBPARAGRAPH (III) AND DOES NOT APPROVE THE PLAN, THE COMMISSION SHALL PROMPTLY PUBLISH AND PROVIDE THE STAFF WRITTEN REASONS WHY THE PLAN WAS NOT APPROVED.

(IV) IF THE COMMISSION DOES NOT APPROVE A PLAN PURSUANT TO SUBPARAGRAPHS (I), (II) OR (III) OF THIS PARAGRAPH (b), THE COMMISSION MUST SUBMIT THE UNAMENDED SECOND PLAN TO THE SUPREME COURT AS SPECIFIED IN SUBSECTION (2) OF THIS SECTION. IF A SECOND PLAN IS NOT DRAFTED PURSUANT TO THIS PARAGRAPH (b), THE COMMISSION MUST SUBMIT THE UNAMENDED INITIAL PLAN TO THE SUPREME COURT AS SPECIFIED IN SUBSECTION (2) OF THIS SECTION.

(2) (a) (I) NO LATER THAN OCTOBER 6 OF THAT SAME YEAR, THE COMMISSION MUST FINALIZE EACH PLAN. THE COMMISSION MAY ADJUST THE DEADLINES SPECIFIED IN SUBSECTION (1) OF THIS SECTION IF CONDITIONS OUTSIDE OF THE COMMISSION'S CONTROL REQUIRE SUCH AN ADJUSTMENT TO ENSURE FINALIZING EACH PLAN AS REQUIRED BY THIS SUBSECTION.

(II) THE COMMISSION MAY GRANT STAFF THE ABILITY TO MAKE TECHNICAL, DE MINIMUS ADJUSTMENTS TO ANY PLAN PRIOR TO ITS SUBMISSION TO THE SUPREME COURT.

(b) (I) THE COMMISSION MUST PROMPTLY SUBMIT THE PLANS TO THE SUPREME COURT FOR REVIEW AND DETERMINATION AS TO WHETHER THE PLANS COMPLY WITH SECTIONS 45, 46 AND 47 AND THIS SECTION OF ARTICLE V. SUCH REVIEW AND DETERMINATION TAKES PRECEDENCE OVER THE OTHER MATTERS BEFORE THE COURT.

(II) THE SUPREME COURT MUST ADOPT RULES FOR SUCH PROCEEDINGS AND FOR THE PRODUCTION AND PRESENTATION OF SUPPORTIVE EVIDENCE FOR THE PLANS. LEGAL ARGUMENTS OR EVIDENCE CONCERNING THE PLANS MUST BE SUBMITTED TO THE COURT

PURSUANT TO THE SCHEDULE ESTABLISHED BY THE COURT, EXCEPT THAT THE FINAL SUBMISSION MUST BE MADE NO LATER THAN OCTOBER 20 OF THAT SAME YEAR.

(c) (I) THE SUPREME COURT MUST EITHER APPROVE THE PLANS OR RETURN ONE OR MORE PLANS AND THE COURT'S REASONS FOR DISAPPROVAL TO THE COMMISSION. IF A PLAN IS RETURNED, STAFF SHALL PREPARE FOR THE COMMISSION'S CONSIDERATION A PLAN TO CONFORM TO THE COURT'S REQUIREMENTS. THE COMMISSION MAY REQUEST THAT STAFF MAKE ADJUSTMENTS TO THE CONFORMING PLAN. AN APPROVED, CONFORMING PLAN MUST BE SUBMITTED TO THE COURT WITHIN THE TIME PERIOD SPECIFIED BY THE COURT. ADOPTION OF A PLAN PURSUANT TO THIS PARAGRAPH REQUIRES THE AFFIRMATIVE VOTE OF AT LEAST EIGHT COMMISSIONERS.

(II) IF THE COMMISSION HAS NOT ADOPTED A PLAN WITHIN THE TIME PERIOD SPECIFIED BY THE COURT FOR THE COMMISSION TO ACT, THE STAFF SHALL PREPARE AND SUBMIT THE UNAMENDED CONFORMING PLAN TO THE COURT WITHIN THE TIME PERIOD SPECIFIED BY THE COURT FOR THE COMMISSION TO ACT.

(III) THE SUPREME COURT MUST APPROVE EACH REDISTRICTING PLAN BY A DATE THAT WILL ALLOW SUFFICIENT TIME FOR THE PLANS TO BE FILED WITH THE SECRETARY OF STATE NO LATER THAN DECEMBER 15 OF THAT SAME YEAR. THE COURT MUST ORDER THAT EACH PLAN BE FILED WITH THE SECRETARY OF STATE NO LATER THAN SUCH DATE.

(f)(3) The general assembly shall appropriate sufficient funds for the compensation and payment of the expenses of the commission members and any staff employed by it. The commission shall have access to statistical information compiled by the state or its political subdivisions and necessary for its reapportionment duties.

**Proposed Initiative 2015–2016 #133**

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning state legislative redistricting, and, in connection therewith, restructuring the state commission that sets boundaries for state senatorial and representative districts to require at least 4 of the 12 commissioners be affiliated with a minor political party or unaffiliated with any political party; prohibiting commissioners from being registered lobbyists or members or candidates for the U.S. Congress or the Colorado legislature; requiring the agreement of at least 8 of 12 commissioners to approve any action of the commission; adding competitiveness as the final criteria to be used in drawing state legislative districts; establishing a procedure to set legislative district boundaries if the commission is unable to adopt a plan; and requiring that the commission's work be done in public meetings.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning state legislative redistricting, and, in connection therewith, restructuring the state commission that sets boundaries for state senatorial and representative districts to require at least 4 of the 12 commissioners be affiliated with a minor political party or unaffiliated with any political party; prohibiting commissioners from being registered lobbyists or members or candidates for the U.S. Congress or the Colorado legislature; requiring the agreement of at least 8 of 12 commissioners to approve any action of the commission; adding competitiveness as the final criteria to be used in drawing state legislative districts; establishing a procedure to set legislative district boundaries if the commission is unable to adopt a plan; and requiring that the commission's work be done in public meetings?

JUSTICE BOATRIGHT, dissenting.

¶37 Initiative 2015–2016 #132 ("Initiative #132") and Initiative 2015–2016 #133 ("Initiative #133") both contain a single subject—changing how electoral districts are redrawn in Colorado. As the Title Board reasonably concluded, every provision in the proposed initiatives relates to that subject and is integral to that subject's fulfillment, meaning the initiatives do not pose any risk of log rolling or of voter surprise and fraud. I would therefore defer to the Title Board's conclusion that both initiatives contain a single subject. Accordingly, I respectfully dissent.

¶38 The majority recites, and I reiterate, that the scope of our review is remarkably limited. Maj. op. ¶ 11 (citing In re Title, Ballot Title & Submission Clause for 2011–2012 #3, 2012 CO 25, ¶ 8, 274 P.3d 562, 565). When assessing whether a proposed initiative satisfies the single subject requirement, we read the initiative's plain language as a whole to determine whether the initiative's subject matter is "necessarily and properly connected rather than disconnected or incongruous." Id. at ¶¶ 11, 15 (quoting In re 2011–2012 #3, ¶ 9, 274 P.3d at 565); In re Title, Ballot Title & Submission Clause for 2009–2010 #45, 234 P.3d 642, 646 (Colo. 2010) ("[W]e must review the initiative as a whole rather than piecemeal . . . ."). Through this analysis, the single subject requirement is designed to ward off two potential dangers of omnibus initiatives: (1) "log rolling," meaning the combination of multiple subjects to attract support for the initiative from several factions; and (2) voter surprise and fraud. Maj. op. ¶¶ 13–14; In re Title, Ballot Title & Submission Clause for 2015–2016 #63, 2016 CO 34, ¶ 11, 370 P.3d 628, 631–32; see also § 1-40-106.5(1)(e)(I)–(II), C.R.S. (2015). Vitally, "we do not

1

address the merits of the proposed initiatives or suggest how they might be applied if enacted," maj. op. ¶ 11, "as those issues do not come up unless and until the voters approve the amendment," In re Title, Ballot Title & Submission Clause for 2013–2014 #89, 2014 CO 66, ¶ 10, 328 P.3d 172, 176.

¶39 Consistent with our limited role in ballot title cases, "we liberally construe the single subject requirement," id. at ¶ 8, 328 P.3d at 176, and "employ all legitimate presumptions in favor of the propriety of the [Title] Board's actions," maj. op. ¶ 10 (quoting In re 2011–2012 #3, ¶ 6, 274 P.3d at 565). Accordingly, we will "overturn the Title Board's finding that an initiative contains a single subject only in a clear case." Id.; see also In re Title, Ballot Title & Submission Clause for 2013–2014 #76, 2014 CO 52, ¶ 40, 333 P.3d 76, 89 (Eid, J., dissenting) ("Among other things, this restraint ensures that we apply the single subject rule 'without conforming it to [our] own policy preferences.'" (quoting In re Title, Ballot Title & Submission Clause for 2009–2010 #91, 235 P.3d 1071, 1088 (Colo. 2010) (Coats, J., dissenting))). Here, when giving the Title Board the required deference and applying the correct standard, I would conclude that these proposed initiatives are not "clear case[s]" of multiple subjects because every provision in the initiatives is necessarily and properly connected to the single subject of changing how electoral districts are redrawn in Colorado.

¶40 Regarding Initiative #132 and Initiative #133, the majority correctly notes that both initiatives would assign to the Supreme Court Nominating Commission ("nominating commission") the task of recommending ten applicants to the "Independent Colorado [in Initiative #133, "Legislative"] Redistricting Commission"

2

("redistricting commission") for the purpose of filling four of its seats. Maj. op. ¶ 6. The majority then concludes that involving the nominating commission in the redistricting process constitutes a separate subject. See id. at ¶ 19. I disagree. The nominating commission's role in recommending members for the redistricting commission is simply part of the initiatives' chosen implementation of a new redistricting process in Colorado and is necessarily and properly connected to the creation of a new redistricting commission under that plan. See In re Title, Ballot Title & Submission Clause & Summary for 2005–2006 #73, 135 P.3d 736, 738 (Colo. 2006) ("Mere implementation or enforcement details directly tied to the initiative's single subject will not, in and of themselves, constitute a separate subject."). It would make no sense to propose a new redistricting commission without also providing the means to add members to it.

¶41 Furthermore, if the majority is correct that assigning the nominating commission the task of recommending applicants to the new redistricting commission constitutes a separate subject, then logically, that "subject" would have to be proposed in a separate initiative. Again, that makes no sense. An initiative that provides how to add members to a new redistricting commission must necessarily create that commission and define that commission's purpose. Simply put, the nominating commission's role in appointing members to the redistricting commission cannot stand on its own and is therefore not a separate subject.

¶42 I also disagree with the majority that the "political ramifications" of redistricting factor into the analysis here. See maj. op. ¶ 25. It certainly may be the case that, by

taking on the task of forwarding to the redistricting commission certain candidates for membership, the nominating commission will lose its "apolitical" character. See id. But that possible future impact on the nominating commission is for the voters, not us, to evaluate. In re Title, Ballot Title & Submission Clause for 2007–2008 #17, 172 P.3d 871, 879 (Colo. 2007) (Eid, J., dissenting) ("The proposed initiative might be a good idea or a bad idea; we must leave that decision to the voters.").

¶43 Regarding Initiative #132, the majority accurately notes that the initiative affects the process for redrawing congressional as well as state legislative districts. Maj. op. ¶ 4. However, I disagree that applying a unitary process to the redrawing of federal and state districts constitutes multiple subjects. While it is true that congressional districts and state legislative districts are currently redrawn under different processes and by different bodies, both clearly involve the redrawing of electoral districts. As such, a proposal to change the process for redrawing congressional districts and state legislative districts has a "general objective or purpose [that] presents only one subject." In re Title, Ballot Title & Submission Clause & Summary for 1999–2000 #25, 974 P.2d 458, 463 (Colo. 1999). By dwelling on the differences in the legal roots and criteria between congressional redistricting and state legislative redistricting, the majority loses sight of the initiative's overall goal and single subject. See In re 2009–2010 #45, 234 P.3d at 646 ("[W]e must review the initiative as a whole rather than piecemeal . . . .").

¶44 I am also not persuaded that Initiative #132 presents the danger of "log rolling." Initiative #132 would present voters with a clear choice between putting in place a new unitary independent redistricting commission in Colorado or, alternatively, preserving

4

the current system.  Voters therefore would not be faced with the dilemma that stems from log rolling initiatives.

¶45    Thus, in my view, both Initiative #132 and Initiative #133 satisfy the single subject rule.  They are not the "clear case[s]" our precedent requires for us to reverse the Title Board.  I would therefore defer to the Title Board's conclusion that both initiatives contain a single subject.  Accordingly, I respectfully dissent.

I am authorized to state that JUSTICE COATS and JUSTICE EID join in this dissent.